LIFER *et al. v.* STATE.

(In Banc.   Dec. 9, 1940.)

[199 So. 107.   No. 34089.]

**M. S. McNeil,** of Hazlehurst, for appellant, W. B. Lifer.

**R. O. Arrington,** of Hazlehurst, for appellant, Mrs. Clara Knotts.

**W. D. Conn, Jr.,** Assistant Attorney-General, for appellee.

**Ethridge, J.,** delivered the opinion of the court.

W. B. Lifer, Clara Knotts and Johnnie Brown were indicted in the Circuit Court of Copiah county, on the 8th of November, 1939, on a charge of grand larceny, for the stealing of two head of cattle—one yellow or cream colored Jersey cow with slipped horns, valued at $45, and one red spotted heifer, valued at $35, making a total of $80.

W. B. Lifer and Clara Knotts were arrested under the indictment on November 13, 1939; and on the 4th day of December the appellants were arraigned, and plead not guilty; moving the court later on the same day to set aside their plea of not guilty, and for a severance in the trial; alleging that the appellants' attorneys were in a room adjoining the courtroom, in a consultation pertaining to other court matters, when the defendants were arraigned, and did not know of it until afterwards.

In this motion to withdraw the plea of not guilty it was alleged that it would be unjust to try the defendants,

appellants here, jointly with the defendant Johnnie Brown, a negro, because he had plead guilty, or confessed his guilt to the sheriff, who had in his possession the written confession, showing that "Johnnie Brown, alias Sam Smith, is guilty of the charge." On the hearing of the motion to withdraw the plea of not guilty, it appeared that the attorneys for the appellants had been employed prior to the entering of the plea of not guilty, but had not read the indictment, and did not know at the time the plea was so entered by the appellants, that there was a joint indictment against the three, not having been notified of the arraignment. The statement of the co-defendant, Johnnie Brown, alias Sam Smith, was introduced on the hearing, in which he had made a confession of guilt, implicating the appellants.

It seems that the appellants appeared on the second Monday of the term, made bond and employed the attorneys; and, further, that the attorneys knew their clients were in the courtroom on the day of the arraignment.

The court overruled the motion for a severance, stating, "I do not see that the rights of this defendant would be prejudiced by a joint trial. It is now getting near the close of the term. There are three cases, three defendants jointly indicted, to-wit; W. B. Lifer, Clara Knotts and Johnnie Brown, alias Sam Smith. Indictments have been pending since November 9th and the parties were not arraigned earlier because of this understanding between the district attorney and counsel for the defendant. If the negro wishes to plead guilty he has an opportunity to do so. I see no reason for granting a severance at this time. The motion will be denied."

It appeared that when the jury was being empaneled the several defendants did not agree as to their challenges. The defendant, W. B. Lifer, desired six peremptory challenges; the defendant, Clara Knotts, desired four; and the attorney for Johnnie Brown, alias Sam Smith, was not present in the courtroom; this attorney lived in Jackson. In this situation the defendant, John-

nie Brown, alias Sam Smith, stated that he desired to withdraw his plea of not guilty and enter a plea of guilty, which statement was made in the presence of the jury being empaneled; the court questioned him as to his desire, stating that he would be allowed to do so.

On the hearing of the case on its merits the co-defendant, Johnnie Brown, alias Sam Smith, was introduced as a witness against the appellants. His testimony showed that on the day the cattle were stolen he went with Lifer and Clara Knotts from the city of Jackson to Mt. Arista Ranch, in Copiah county, near the Hinds-Copiah line, and there they took the cow and heifer mentioned in the indictment from the pasture, brought them to Jackson, and W. B. Lifer sold the cattle to the Jackson Packing Company, taking a sale slip showing the sale of the cattle, the price and weight, in the name of Sam Smith. He took this slip to the office, some little distance from where the cattle were unloaded, sold and weighed, and there procured a check made out to Sam Smith. He then took the check to the Merchants Wholesale Company and cashed it, giving Johnnie Brown some of the money.

It appears from the evidence that when the truck was taken to the place where the cattle were to be loaded on it, there was a wire fence around the pasture, and Lifer told Johnnie Brown to cut it. According to Brown's testimony, he had no pliers with which to do this, but at Lifer's direction procured them from Mrs. Knotts. According to Lifer, Brown had the pliers and cut the fence, and the cow and heifer were then loaded in the truck; after which Mrs. Knotts, who had some blank bills of sale belonging to Lifer, filled one out, and signed thereto names of witnesses who were not present, and who were strangers to the transaction. These witnesses were not such in fact. The bill of sale was made out to W. B. Lifer, describing one cow and one heifer, giving the color of the cattle, the name of the owner as Sam Smith, and the witnesses as Henry Harris, Mary Smith and Charley White,

the last name being entirely fictitious. On the trial Henry Harris was produced for identification by W. B. Lifer, who stated that he had never seen Harris.

The witness, Johnnie Brown, testified that after the sale of the cattle and the receipt of the money, Lifer gave him $31; and they parted at the corner of Pearl and Lamar streets.

Lifer's testimony is to the effect that he did not buy the cattle from Smith, because he asked too much for them, but that after disagreeing about the price of the cattle, he consented to haul them to the Jackson Packing Company, which apparently was owned by one, Beasley, for half a cent per pound of the weight of the cattle. He admitted that he collected the money for the cattle, as above stated, but claims to have given Johnnie Brown, alias Sam Smith, the sum of $45, retaining $7.85 for himself, as his charge for hauling the cattle.

Johnnie Brown's testimony was to the effect that after this transaction, while he was passing the residence of Mrs. Knotts, on Lynch Street in Jackson, she called, "Hey, Sam!" He did not answer, as that was not his name, whereupon she called something like, "Hey, boy!" and he answered, "Yes'm," and she asked if he had heard that he was under suspicion about the cattle, to which he replied that he had not. She told him he was suspected, and it would be better for him to leave town a while, until the affair blew over. He went near Bolton, where he picked cotton a few days; then went to Rankin county, near Pelahatchie, where he was when arrested. From the testimony of another witness, who was investigating the affair, it appears that on his approaching Lifer, the latter at first did not make a statement, but did so later, claiming that he had declined to buy the cattle, but that he had hauled them for Sam Smith, who in reality was Johnnie Brown, to the packing plant for a stated compensation,—stating that if they would give him a little time he would produce Sam Smith. This party had found that the cattle had been sold to the packing

house owned by Beasley. Both Lifer and Mrs. Knotts were arrested and separately interrogated by the officers, each making a statement in writing in the absence of the other, as also did Johnnie Brown; which statements differed in material particulars.

There were other incriminating circumstances, needless to set forth. Lifer introduced witnesses who testified to his previous good reputation for honesty and fair dealing in the community where he lived.

We think the evidence is sufficient to sustain the conviction.

It is settled law in this state that a person may be convicted upon the uncorroborated testimony of an accomplice, if his testimony is reasonable. Boutwell v. State, 165 Miss. 16, 143 So. 479; Matthews v. State, 148 Miss. 696, 114 So. 816.

This Court has further held that when the testimony of an accomplice is even slightly corroborated, it is sufficient. Frazier v. State, 142 Miss. 456, 107 So. 674. And this is true, even though the accomplice has been convicted, or has been held to be guilty. Gates v. State, 160 Miss. 479, 135 So. 189.

In his testimony in his own behalf Lifer was confused, hesitated, and at times failed to answer interrogatories propounded to him, as shown by the record. Taking all the testimony together, it clearly appears that the act of Lifer and Mrs. Knotts was not consistent with an honest belief, reasonably entertained, that the negro owned the cattle, and was selling them as his own. Mrs. Knotts did not testify, and Lifer testified that she received none of the money; but under the circumstances above stated was participating in the act, made out a fictitious bill of sale, and signed names thereto as witnesses, who were not present. She was in Lifer's company under circumstances clearly indicating that they were not engaged in this transaction in good faith.

Instruction No. 5 for the state is complained of, and it is technically inaccurate; but we think it was not

misleading, and was probably understood by the jury to mean that Lifer's assistance was given with knowledge that the cattle were being stolen. The instruction reads: "The court instructs the jury for the state that if you believe from all of the evidence in this case beyond a reasonable doubt that the defendant, Johnnie Brown, alias Sam Smith, did wilfully, unlawfully and feloniously take, steal and carry away the cattle in question, of the value of more than $25.00, the property of A. Somers, and that the defendant, W. B. Lifer, was then and there present and knowingly aiding and assisting therein, then the defendant, W. B. Lifer, is guilty as charged, and it is your sworn duty to so find, and this is true regardless of what amount of money he received, if any, from the sale of the cattle."

The instruction should have used the language, "Knew the cattle were being stolen," or some equivalent expression. It is possible for a person to "knowingly aid" in the taking of cattle which is, in fact, being stolen, without having knowledge of that fact. But in the light of all the evidence in the case, and of the probability that the jury fully understood the real purport of the instruction, it is not reversible error. As stated above, the conduct of Lifer and Mrs. Knotts, even on their own statements, was not consistent with innocent participation.

This is especially true when considered in connection with the notorious prevalence of the stealing of such property as cattle, chickens, etc., in many sections of the state. A prudent person, under the circumstances, would have made inquiry, and would not have taken the word of a negro, who appears to have been more or less a transient in the community where the theft occurred. It is true that he had lived in Jackson; but so far as the record shows, he had not been in the particular community engaged in farming or cattle raising.

We have given consideration to all the evidence and instructions, and find no reversible error. The judgment will, therefore, be affirmed.