421 So.2d 1025 (1982)
Edward Lee OATES
v.
STATE of Mississippi.
No. 53623.
Supreme Court of Mississippi.
November 3, 1982.
*1026 Scruggs & Williams, Eddie C. Williams, Bernard Gautier, Pascagoula, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SUGG, P.J., and BROOM and BOWLING, JJ.
SUGG, Presiding Justice, for the Court:
During the early morning hours of July 4, 1979, Marsha L. Allred was kidnapped from her job as a Memphis, Tennessee convenience store clerk. Skeletal remains found in a secluded area of Jackson County, Mississippi in November, 1979, were identified as Miss Allred's in April, 1980. The appellant was arrested in April, 1980, and convicted in May, 1981, of the capital murder of Miss Allred. A Jackson County jury was unable to agree on Oates' punishment. In a separate sentencing hearing he was sentenced, *1027 pursuant to section 99-19-81 Mississippi Code Annotated (Supp. 1982), by the trial judge to life in prison without parole as an habitual offender.
The state's case rested primarily on the testimony of Walter Thomas Godsey, Jr., an accomplice and co-indictee and the defendant's cousin. Godsey related the following sequence of events leading up to and occurring after the tragic death of Miss Allred.
In early July or late June, 1979, Oates visited Godsey and told him of better jobs on the Mississippi Gulf Coast. Both left in Oates' 1973 Monte Carlo and were traveling to the Coast when the car broke down in Memphis, Tennessee. Testimony showed that the two left the car parked in front of the man's house who had previously sold the Monte Carlo to Oates, a Mr. Wallace. While hitchhiking back to Godsey's mother's house they obtained possession of a 1979 brown Chevrolet Impala. A gas station attendant confirmed that Godsey, in the company of a man the attendant could not positively identify, purchased gas for the vehicle on the night of July 2, 1979. The next day Godsey picked up his pay check before the two men headed back to Memphis.
During the early morning hours of July 4, 1979, the two parked across the street from the convenience store where the victim worked. With the intention of robbing the store, they remained parked for about one hour until the victim was alone. When Godsey went inside, Oates grabbed the victim and forced her into the car. Unable to open the cash register, Godsey took the victim's purse and some cigarettes and went outside to the car where Oates pulled a gun on him and told him to drive towards Mississippi.
Oates raped the victim as Godsey drove to the Mississippi Gulf Coast and, upon arriving at a secluded wooded area in Jackson County, Godsey also raped the young victim. She was then taken down to a washed out creek bed and killed. The two left the body in the woods and returned to Memphis, arriving there around midnight of July 4, 1979.
They spent the night in the brown Chevrolet in front of the house where they had earlier left the Monte Carlo. This was corroborated by Mr. Wallace. The next day the three repaired the Monte Carlo by swapping engines with the brown Chevrolet. Godsey and Oates then traveled to Godsey's mother's house again and on the return trip to Memphis they picked up two hitchhikers, a young male and female, and offered to drive them to Florida. They got to Biloxi before Oates ordered Godsey to return to Memphis, but while in Biloxi, Oates purchased some bullets for his gun. These events were confirmed by a voluntary statement Oates gave the Memphis police.
Oates allegedly told Godsey that he was going to kill the male hitchhiker and rape and kill the female. Godsey told the two young hitchhikers about Oates' plan and his desire to help them escape. He helped them escape by stealing Oates' car on July 10, 1979, after they returned to Memphis.
Godsey and the youths were subsequently picked up on July 11, 1979, by police in Ardmore, Tennessee after Godsey stole some gasoline. Godsey told the investigator that he had seen Oates kill someone but did not go into the details. The police eventually dropped their investigation after they were unable to verify the story.
Godsey spent ten months in a county jail in Pulaski, Tennessee as the result of the larceny of the gas and other charges. Upon his release, he obtained employment in Memphis and for the first time revealed all the details of the Allred kidnap and murder  first to his employer, next to his father, and then to Memphis Police.
He agreed in April, 1980, to direct Memphis police to the murder scene on the Gulf Coast. They traveled to Jackson County and joined officers with the sheriff's department. Unknown to either Godsey or the Memphis police, a hunter found Miss Allred's skeletal remains some five months earlier but in order to verify Godsey's story he was not told of this until he led the investigators to the exact location where the skeleton was found previously.
*1028 As a result of Godsey's information officials were able to positively identify the bones as Miss Allred's. After interviewing Godsey Jackson County officials issued a warrant for the arrest of Mr. Oates on a capital murder charge. Oates was arrested in Memphis by Memphis police on April 20, 1980.
In prosecuting this appeal it is alleged that the following propositions justify reversal of the conviction and sentence.
I. THE TRIAL COURT ERRED WHEN IT FAILED TO SUSTAIN APPELLANT'S MOTION TO QUASH THE INDICTMENT.
II. THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT APPELLANT A CONTINUANCE.
III. THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT APPELLANT A MISTRIAL.
IV. THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT AS AN HABITUAL OFFENDER PURSUANT TO MISSISSIPPI CODE ANNOTATED § 99-19-81 (SUPP. 1981).
V. THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT APPELLANT A JUDGMENT NOTWITHSTANDING THE VERDICT SINCE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

I
Relying on Earnest v. State, 237 Miss. 509, 115 So.2d 295 (1959), and Section 13-5-53 Mississippi Code Annotated (1972), appellant argues under his first assignment that the indictment is void because it was returned by a grand jury which was recalled, not by the trial judge, but by the district attorney's office. The theory being that the above authorities vest the exclusive power to recall the grand jury in the circuit judge.
The record shows that on February 27, 1981, the grand jury was recalled by court order to meet on March 9, 1981. It met on this day, but returned no indictments, and met again on March 25, again with no indictments returned. It met once again on April 8, 1981, returned the indictment against Oates and issued its final report. The trial judge overruled the motion to quash and granted the prosecutor's motion to amend the indictment to show that the grand jury was recalled March 9, 1981, rather than April 8, 1981.
Once the judge recalled the grand jury by order of February 27, 1981, it was unnecessary for the judge to recall it each day it met thereafter until the final report was issued. This Court held in Bell v. State, 118 Miss. 140, 79 So. 85 (1918), that the statute then in effect requiring the circuit judge to empanel the grand jury during the first half of the term did not impose any limitation upon the time the grand jury could continue in session after empaneling.[1] Implicit in Bell is a recognition that once empaneled or recalled, a grand jury is in session for the duration of the term or until discharged. See Tubby v. State, 327 So.2d 272 (Miss. 1976). (A new grand jury is required for each term.) In the present case the grand jury was duly recalled by the court order. The district attorney merely selected the days it would actually meet and was not recalling a grand jury. Once recalled, the grand jury was vested with authority to hear evidence and to return indictments; therefore, there is no merit in the assignment.

II
Cole v. State, 405 So.2d 910 (Miss. 1981), reaffirmed the rule that trial judges are vested with considerable discretion in their decision to grant or deny continuances. Furthermore, section 99-15-29 Mississippi Code Annotated (1972) states in part that a denial of a continuance shall not be *1029 grounds for reversal unless this Court is satisfied that an injustice resulted therefrom. In sum, no rigid rule can be laid down and each case must be judged on its own merits. Shaw v. State, 378 So.2d 631 (Miss. 1979).
In this case appellant's counsel was appointed by the court on November 6, 1980, to represent the appellant. Trial was set for March 2, 1981, and ended in a mistrial. Oates was reindicted on April 8, 1981, on the same charge but with the addition of the habitual criminal charge. The first indictment was quashed on April 29, 1981, whereupon appellant's counsel informed the district attorney's office on May 1, 1981, that he no longer represented the defendant. On May 1, 1981, the court ordered counsel to appear at the trial set for May 4, 1981. On the day of trial appellant's counsel made a motion for a continuance which asserted that counsel for the appellant had insufficient time to prepare for trial, especially so because of the additional charge that appellant was an habitual offender.
Motions for a continuance grounded on the theory that counsel have not had sufficient time to prepare for trial are subject to proof. Brown v. State, 252 So.2d 885 (Miss. 1971); Barnes v. State, 249 So.2d 383 (Miss. 1971). In Brown we reaffirmed that,
It is a well settled rule in this state that a motion is at issue without further pleading and that the allegations thereof do not amount to any proof of the facts stated therein. It is the duty of the movant to support his motion by proof and in the absence of proof in support of the motion, the presumption in favor of the correctness of the action of the trial court will prevail. Harvey v. State, 218 So.2d 9 (Miss. 1969). (252 So.2d at 887)
The record does not show that the appellant offered any proof in support of the motion. Consequently, we are not in a position to say that the court abused its discretion; nor are we able to say that the denial resulted in an injustice.

III
The appellant moved for a mistrial twice, once during the district attorney's opening argument and once during the direct examination of the accomplice Godsey, on the grounds that the state improperly injected evidence of a crime committed by the appellant which was separate from the one for which he was on trial, the raping of Miss Allred. While it is well settled that proof of a crime separate from that charged in the indictment should not be admitted into evidence against an accused, it is equally well settled that there are certain recognized exceptions to the rule. It is sufficient to state that Tolbert v. State, 407 So.2d 815 (Miss. 1981) and Gray v. State, 375 So.2d 994 (Miss. 1979), cert. denied, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 847 (1980), and the numerous authorities cited therein render this assignment meritless. Proof of the crime of rape was admissible not only as part of the res gestae but also to prove a possible motive for the crime charged.

IV
After the jury could not reach a decision during the sentencing phase, the state announced to the court that it was ready to proceed with the "habitual offender part of this case." The state had already introduced, as an aggravating circumstance, a certified copy of a conviction for rape rendered in DeSoto County, Mississippi in February, 1981. A certified copy of a conviction on a charge of burglary was introduced to satisfy the statutory requirement of two prior convictions. After the introduction of these convictions the trial judge inquired of the appellant whether he objected to or contested the convictions. Appellant's counsel responded by lodging the general objection that the entire procedure was unconstitutional.
On appeal he argues for the first time that the procedure was unconstitutional because it was incumbent upon the state to prove the validity of the prior conviction and the matching identity of the prior offender and the offender before the court.
*1030 Without reaching the merits of the argument, we address the assignment to reiterate the necessity of counsel making specific objections in order to preserve a question for appellate review. We have said many times that general objections will not suffice. Objections to the admissibility of evidence must specifically state the grounds, otherwise, the objection is waived. E.g. Parker v. State, 367 So.2d 456 (Miss. 1979); Lay v. State, 310 So.2d 908 (Miss. 1975); Norman v. State, 302 So.2d 254 (Miss. 1974); Stringer v. State, 279 So.2d 156 (Miss. 1973). General objections to prosecutors' comments in closing arguments do not preserve the point for review. Austin v. State, 384 So.2d 600 (Miss. 1980). Errors based on the granting of an instruction will not be considered on appeal unless specific objections stating the grounds are made in the trial court. Collins v. State, 368 So.2d 212 (Miss. 1979); Miss.Sup.Ct. Rule 42.
It is observed that the objection here does not assail the constitutionality of the enhanced punishment of habitual offenders, but simply attacks the method by which one is adjudged an habitual offender. Had counsel's specific objection to the procedure been pointed out at trial, the appellee would have been afforded an opportunity to supply the necessary proof and obviate the objection.
There are three basic considerations which underlie the rule requiring specific objections. It avoids costly new trials. Boring v. State, 253 So.2d 251 (Miss. 1971). It allows the offering party an opportunity to obviate the objection. Heard v. State, 59 Miss. 545 (Miss. 1882). Lastly, a trial court is not put in error unless it had an opportunity to pass on the question. Boutwell v. State, 165 Miss. 16, 143 So. 479 (1932). These rules apply with equal force in the instant case; accordingly, we hold that appellant did not properly preserve the question for appellate review.

V
Under appellant's final assignment he submits that accomplice Godsey's testimony was uncorroborated, unreasonable, self-contradictory, and substantially impeached and hence insufficient to support the verdict. This is not unexpected because, if Godsey's testimony is accepted, Oates' guilt of this heinous crime is overwhelming.
At the outset it must be noted that appellant's counsel was granted, although not in the exact wording he submitted, an instruction to the jury that an accomplice's testimony should be viewed with great caution and suspicion.
On cross-examination, Godsey admitted that his story on direct was not the same he had earlier told Memphis police, but claimed the inconsistencies were due to an attempt to cover for himself. He did not tell them he was the one who went into the store; he did not mention his raping Miss Allred; he changed his story about his prior trip to Biloxi; he changed his statement that Miss Allred was inside and that a gun was used to abduct her; he changed his original statement to police that he and Oates arrived back in Memphis on the afternoon of the Fourth.
Aside from eliciting the above contradictions, there were extensive defensive efforts to impeach Godsey's testimony by showing he had been offered a deal in exchange for his testimony and a plea of guilty. Godsey's court-appointed attorney was examined at length and revealed that the district attorney told him that if Godsey testified and pled guilty, the best he could recommend was at least eight years to serve and a possible reduction of the charge to accessory after the fact. Since Godsey had already agreed to testify before he met the district attorney, the situation was not the typical plea bargain arrangement. Godsey's attorney admitted that he did not consider a "deal" made, although he did inform his client about the discussions. However, he also told Godsey that his actual sentence would be determined by the judge, notwithstanding any statements made by investigators or the district attorney's office.
The defense also presented testimony from two of Godsey's cell-mates. One testified *1031 that Godsey told him and another inmate that he killed Miss Allred but then immediately denied it. Another cell-mate testified that Godsey, in discussing his case, stated he was putting the blame on Oates and would "get out of it."
Finally, the testimony of Oates' mother and uncle was presented. Although offered in impeachment of Godsey's testimony that he was on the Gulf Coast on July 4, 1979, both presented an alibi defense for Oates by testifying that he and Godsey were at a family picnic in Walls, Mississippi on July 4th. However, on cross-examination it was brought out that neither told the police about this when questioned by them during preliminary investigations.
It is an established rule in Mississippi that the uncorroborated testimony of an accomplice may be sufficient to convict the accused, even where the charge is capital murder and the sentence imposed is death. E.g., Jones v. State, 381 So.2d 983 (Miss. 1980). As announced in Jones, citing Lifer v. State, 189 Miss. 754, 199 So. 107 (1940), where the record contains even slight corroborative evidence this Court will hold that the accomplice's testimony is sufficient to sustain the verdict. In this vein it is readily apparent that Godsey's testimony was corroborated on more than one detail.
Assuming Godsey's testimony is uncorroborated, it is not so unreasonable or improbable as to be unbelievable. As stated in Jones, supra, it is for the jury to determine the impeachment value of inconsistencies and contradictions. Jones, 381 So.2d at 989. Moreover, Godsey's testimony was only impeached on incidental details of the crime. He was never substantially impeached on his testimony that he and Oates kidnapped the victim and Oates killed her.
Finding no merit in any of appellant's arguments, we affirm his conviction and sentence.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] The Mississippi Constitution of 1890 was amended in November, 1972 by the addition of section 264. This section allows the grand jury to meet in term time or vacation and allows the circuit judge to empanel in term time or vacation.