# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-01053-SCT

*SARA SCOTT a/k/a 'TIC'*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/24/1999 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DWAYNE G. DEER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | DUNN O. LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/26/2001 |
| MOTION FOR REHEARING FILED: | 5/24/2001; denied and opinion modified at paragraph 39 10/18/2001 |
| MANDATE ISSUED: | 10/25/2001 |

### BEFORE PITTMAN, C.J., MILLS AND WALLER, JJ.

### PITTMAN, CHIEF JUSTICE, FOR THE COURT:

¶1. This case arises on appeal from Sara Scott's conviction for distribution of cocaine. Scott was also accused of conspiracy to unlawfully distribute cocaine, which she successfully defeated when her motion for a directed verdict was granted. Scott was sentenced to a term of fifteen (15) years in the custody of the Mississippi Department of Corrections, with the first ten (10) years to be served and the remaining five (5) years to be served on post release supervision. Scott was also ordered to pay a $5,000 fine and restitution of $110 to the Mississippi Bureau of Narcotics plus attorney fees of $500 and court costs.

¶2. The circuit court denied Scott's motion for a new trial, or in the alternative, a j.n.o.v. Scott now appeals requesting a reversal of her conviction and a remand to circuit court for a new trial.

### FACTS

¶3. Ginny Burrow, an undercover informant, bought drugs from Sara Scott, otherwise known as "Tic", at Scott's home on Climmons Road in Pike County on December 4, 1997. Law enforcement officers had placed a tape recording device on Burrow, searched her person and automobile, and provided her with one hundred dollars to purchase drugs. The recorder and transmitter were placed in Burrow's clothes for her protection and to collect incriminating evidence against Scott. Burrow had previously provided officers information about an illegal crystal methamphetamine operation in Franklin County and had approached narcotics agent Art Thomas with an offer to act as an informant in the hope that it would help her reduce her sentence for twelve counts of check forgery.

¶4. As Burrow drove down Climmons Road toward Scott's house, she was followed closely by Agents Reeves and Aldridge, who only momentarily lost sight of her. The audio tape recorded Burrow approaching the house and Gatlin telling her to follow him to the back of the house. Burrow knew Scott and Jasper Gatlin, Scott's son, for six months prior to this drug transaction. Scott was in her bedroom watching a movie with her boyfriend. Burrow and Scott spoke for a few minutes before Burrow asked if she could purchase one hundred dollars' worth of crack cocaine. The audio tape of the transaction indicates Scott stated that she would do business as long as police were not involved. Scott told Gatlin to hand her a tray sitting on a dresser that had a large piece of crack cocaine placed on it. Scott subsequently asked Gatlin to cut off a piece for Burrow with a razor. Burrow gave Scott one hundred dollars for the crack, and Scott placed the crack in Burrow's hand. Burrow left, holding the piece of crack in her hand until delivering it to Agent Thomas. Once Burrow had driven back to the agents, they confiscated the crack from her as well as the audio tapes, recorder and transmitter. They also conducted another search of Burrow, finding that she no longer had the one hundred dollars they had given her to make the drug buy.

¶5. Burrow identified Scott as having a decorative gold cap on a tooth that could be slipped on and off. At trial Scott called defense witnesses who stated that they had never seen Scott wearing a gold tooth. Scott testified denying that she had ever sold drugs to anyone. She also denied that she had a gold tooth. She also pointed out that she was 4'11" and weighed approximately 190 pounds, instead of 5' and 150 pounds as described by Burrow. Testimony of Crime Lab employee Lea Heath at trial showed that the substance sold to Burrow weighed .5 grams and was indeed cocaine.

## DISCUSSION

### I. DID THE TRIAL COURT ERR IN NOT ALLOWING SCOTT TO CROSS EXAMINE GINNY BURROW ABOUT PENDING INDICTMENTS AGAINST HER?

¶6. Scott contends that she should not have been limited by the trial judge in her cross- examination of Burrow. Scott was allowed to question Burrow regarding her prior convictions, but not about whether there were any pending indictments against Burrow. Scott claims that questioning about Burrow's possible pending indictments should have been allowed because it could show why the witness may have been favorable to the State. A thorough review of the record does not reveal whether Burrow had any pending indictments at the time of her being questioned at this trial.

¶7. The attempted cross-examination and subsequent objection occurred as follows:

Q (by Mr. Luckett, attorney for Scott) Okay. And as you sit here now, you are presently under indictment for some other charges aren't you?

A (by Burrow) I believe those charges have been dropped.

Q You are presently under indictment, is that correct?

A Not that I know of.

MR. LUCKETT: May I approach, Your Honor?

THE COURT: Yes, sir.

MS. JONES (attorney for the State): Your Honor, I would object to this line of questioning as being irrelevant and not offered for impeachment.

MR. LUCKETT: I'm just asking if she's under indictment, Your Honor.

THE COURT: Counsel, approach the bench, please.

(OFF THE RECORD DISCUSSION AT BENCH OUT OF HEARING OF COURT REPORTER AND JURY.)

THE COURT: Sustain the objection. Under Rule 6.09, if there is no conviction---

MR. LUCKETT: ---Yes, sir.

¶8. The trial court sustained the objection based upon M.R.E. 609(a) which states:

RULE 609. IMPEACHMENT BY EVIDENCE OF CONVICTION OF CRIME

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.

M.R.E. 609(a).

¶9. Scott claims that she should have been allowed to cross-examine about pending indictments to determine if there were any "deals" with the prosecution that could have influenced Burrow's testimony. Scott refers to M.R.E. 611 which states in pertinent part:

RULE 611. MODE AND ORDER OF INTERROGATION AND PRESENTATION

(a) Control by Court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

(b) Scope of Cross-Examination. Cross-examination shall not be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.

. . . .

M.R.E. 611. Scott asserts that M.R.E. 611(b) provides support because it allows for "wide-open cross examination" as long as the matter is relevant. M.R.E. 611(b) cmt.; *State Highway Comm'n v. Havard*, 508 So. 2d 1099, 1102 (Miss. 1987). Scott also states that a judge may limit cross-examination to serve one of the purposes stated in M.R.E. 611(a) such as to make the examination effective for ascertaining the truth; avoid wasting time; or to protect witnesses from harassment or undue embarrassment. M.R.E. 611(b) cmt.; *see also* *Johnston v. State*, 618 So.2d 90, 93-94 (Miss. 1993); *Sayles v. State*, 552 So 2d 1383,

1386 (Miss. 1989).

¶10. Scott also refers to M.R.E. 616 which provides the following:

RULE 616. BIAS OF WITNESS

For the purpose of attacking the credibility of a witness, evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible.

M.R.E. 616. Scott argues that she as a defendant, in light of Rule 616, should be given wide latitude to discover the truth about the State's main witnesses. Scott presents case law which she believes shows how this Court has allowed cross-examination to determine why a witness may be favorable to the State.

¶11. Scott relies on *Bevill v. State*, 556 So.2d 699 (Miss. 1990), where it was stated:

(i)n this case the defendant's purpose for developing the facts as to this conviction was not simply to discredit (the witness) because he had been convicted of such a crime (which may very well have been inadmissible under some provision of Rule 609), but to ferret out any motive or reason (the witness) might have to be such a favorable state witness.

*Id.* at 713-14. Scott also refers to *Suan v. State*, 511 So. 2d 144 (Miss. 1987) which states:

"(e)vidence that a material witness has received favored treatment at the hands of law enforcement authorities, particularly where that witness is himself subject to prosecution, is probative of the witness' interest or bias and may be developed through cross examination or otherwise presented to the jury.

*Id*. at 147-48 (citing *Malone v. State*, 486 So.2d 367, 368-69 (Miss. 1986); *Hall v. State*, 476 So.2d 26, 28 (Miss. 1985); *Barnes v. State*, 460 So.2d 126, 131 (Miss.1984); *King v. State*, 363 So.2d 269, 274 (Miss. 1978); *Sanders v. State*, 352 So.2d 822, 824 (Miss. 1977)). Scott alludes to the fact that both the State and Burrow claimed that Burrow did not receive help with her prior conviction, but that the jury was denied evidence about cases still pending against Burrow. Scott believes that her counsel should have been afforded the opportunity to "ferret out" any deals or Burrow's hope for possible deals with the State.

¶12. Scott refers to *Nalls v. State*, 651 So.2d 1074, 1076 (Miss. 1995), which states, "(t)he right of confrontation and cross-examination...extends to and includes the right to fully cross examine the witness on every material point relating to the issue to be determined that would have bearing on the credibility of the witness and the weight and worth of his testimony." (citing *Myers v. State*, 296 So.2d 695 (Miss. 1974)). Scott claims that Burrow had an interest in keeping the District Attorney's office happy with her and that she should have been able to show this to the jury through cross-examination.

¶13. Scott alludes to M.R.E. 608(b) which provides:

RULE 608. EVIDENCE OF CHARACTER AND CONDUCT OF WITNESS

(b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of

truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

M.R.E. 608(b). Scott also points to M.R.E. 607, which states in part "that the credibility of a witness may be attacked by any party." M.R.E. 607. Scott cites M.R.E. 403 regarding relevancy which declares that "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury..." M.R.E. 403. Scott asserts that little ill effect would have resulted from the jury discovering that Burrow was currently under indictment and that the probative value of such information had the potential of being very high. Scott feels that the probative value of possible indictments coupled with the authority provided in M.R.E. 608(b) and M.R.E. 607 should have enabled her to question Burrow about the existence of any indictments against Burrow.

¶14. Scott believes that her not being allowed to cross-examine Burrow as to her pending indictments deprived her of the opportunity to adequately confront the witness against her. Scott relies on *Hubbard v. State*, 437 So.2d 430, 433-34 (Miss. 1983), where this Court stated that Article 3, Section 26, of the Mississippi Constitution grants and guarantees a criminal defendant the right to confront witnesses against him; and upon *Myers v. State*, 296 So.2d 695, 700 (Miss. 1974), where this Court commented that the right of confrontation "extends to and includes the right to fully cross examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony."

¶15. Scott argues that because Burrow was not a party to this case that any prejudice that may have been created against her would be irrelevant. This Court recently faced a similar dilemma in *Young v. State*, 731 So.2d 1145, 1151 (Miss. 1999). In that case the State argued that any prejudice to their primary witness would unduly prejudice the State's case. *Id*. This Court decided that, since the witness for the State was not a party, any prejudice to him would be irrelevant. *Id*. It was determined by the Court that to deny the defendant the right to fully explore an aspect of the witness's credibility is equivalent to denying him the right to fully confront the witnesses against him. *Id*.

¶16. The lack of evidence in the record that there were any pending indictments against Burrow, coupled with the fact that there is no record of the content of the bench conference contained in the record proves fatal for Scott on this issue. Because the bench conference and arguments that occurred therein were not preserved on the record, review of the alleged error is waived in accordance with *Cotton v. State*, 675 So.2d 308 (Miss. 1996); and *Edwards v. State*, 723 So.2d 1221 (Miss. 1998). It is well established that objections must be made with specificity to preserve for appeal. *Oates v. State*, 421 So. 2d 1025, 1030 (Miss. 1982) (citing *Heard v. State*, 59 Miss. 545 (1882)).

¶17. Even if the issue were not barred for failing to have the bench conference argument on the record, Scott would still not succeed on this issue. It is not as if Burrow's character and past were never put before the jury in this case. Direct and cross-examination clearly revealed that she had worked as an informant for the State in this case; that she had a prior conviction for writing twelve (12) bad checks in 1997; and that she was previously addicted to crack cocaine, adequately impeaching the witness's character in front of the

jury. The trial court did not err in not allowing Scott to cross-examine Burrow about pending indictments against her.

### II. DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO PRESENT REBUTTAL TESTIMONY FROM GINNY BURROW ABOUT ALLEGED PRIOR SALES OF COCAINE BY SARAH SCOTT?

¶18. Scott asserts that the trial judge erred in allowing the State to present rebuttal testimony through Burrow regarding prior sales of cocaine by Scott. Scott testified on her own behalf.

¶19. Direct examination of Scott began with the following line of questioning:

Q Ms. Scott, you have heard a lot of testimony about you today.

A Yes, sir.

Q And I'll just begin by asking you a question I think we all want to hear. On 12-4-97 when, if ever, did you sell drugs to anyone?

A I did not.

Q Are you absolutely certain?

A I'm positive.

¶20. After Scott rested, the trial judge asked the State if it had any additional witnesses, to which the State responded that it had a rebuttal witness. Discussion between the trial judge and the attorneys regarding the proposed rebuttal testimony was as follows:

(THE FOLLOWING PROCEEDINGS HAD IN ABSENCE OF JURY.)

BY MS. JONES: Your Honor, on direct examination Mr. Luckett asked Ms. Scott whether she had ever sold cocaine to Ginny Burrow before, and Ms. Scott replied in the negative. That was on direct examination. It's my intention now to put Ms. Burrow back on the Stand and have her testify about the other times when she in fact bought cocaine from Sarah Scott. I gave Mr. Luckett notice that she would be able to say that in the summary I gave him, I believe sometime last week.

BY THE COURT: Mr. Luckett?

BY MR. LUCKETT: Of course, Your Honor, we're going to object.

BY THE COURT: What's the basis of your objection?

BY MR. LUCKETT: Prejudicial, Your Honor, unduly prejudicial. Ms. Scott has been charged with sale or distribution of cocaine on December 4, 1997; any mention of any alleged drug sales anytime other than December 4, 1997 is certainly prejudicial to my client, Your Honor. If she's been indicted for that or there's another case pending, certainly this would prejudice her case, Your Honor.

BY THE COURT: Ms. Jones, anything further?

BY MS. JONES: Yes, sir. The crux of Ms. Scott's defense seems to be the case of mistaken identity, that Ms. Burrow was mistaken about who she is and whether or not she had a gold tooth in her mouth, and to show that Ginny had known her before, and also had a drug buying relationship with her is very probative of the fact that she was not mistaken as to who she is.

BY MR. LUCKETT: And she's also testified, Your Honor, that the length of that relationship was approximately six months. So, if Ms. Jones insist(s) [sic] on this line of questioning, then we would restrict her to six months prior to this alleged incident.

BY MS. JONES: That would be all she could testify to. I would ask her during the six months or so that you have known her, how many other occasions did you buy crack cocaine from her.

BY THE COURT: Well, the only purpose for this testimony is to question the credibility of the Defendant. There will need to be a limiting instruction. The jury will need to be instructed that it is only being submitted for the purpose of attacking the credibility of the defendant. This is something that, this type of rebuttal has been bounced back and forth, I think currently the posture of the Supreme Court says it is proper, if the door has been opened and the statements were just plainly made that - - the questions were asked by the Defendant's attorney; so, the rebuttal would be proper for the purpose of attacking the credibility only, and, as I said, there will need to be a limiting instruction. That's the only purpose that the jury should consider this for. Ask the jury to come in, please.

¶21. Once the jury returned, Burrow was then questioned by the State. The testimony was as follows:

Q Ms. Burrow, in the six so months that you have known Ms. Scott prior to December 4, 1997, during that time, how often, if ever, did you buy crack cocaine from her, other than December 4th?

A Many, many times.

Q And where would that take place?

A At her house.

¶22. Scott cites M.R.E. 404(b) to support her contention that the rebuttal testimony should not have been allowed:

RULE 404. CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT; EXCEPTIONS; OTHER CRIMES

. . . .

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

. . . .

M.R.E. 404(b).

¶23. Scott then refers to the *Watts v. State*, 635 So.2d 1364 (Miss. 1994) where this Court discussed the interrelationship between M.R.E. 404(b) and the prejudice test contained in M.R.E. 403.

> The Court first noted that in order to pass muster under Rule 404(b), evidence must 'be such that it satisfies some other evidentiary purpose beyond simply showing that [the defendant] is the sort of fellow likely to commit the crime charged....' If and when evidence clears the hurdle of Rule 404(b), however, it must still clear the test of Rule 403. The Jenkins court further reminded us: To be sure, evidence admissible under Rule 404(b) is also subject to the prejudice test of Rule 403; that is, even though the Circuit Court considered the evidence at issue admissible under Rule 404(b), it was still required by Rule 403 to consider whether its probative value on the issues of motive, opportunity and intent was substantially outweighed by the danger of unfair prejudice. In this sense Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass.

*Id*. at 92-93 (quoting *Jenkins v. State*, 507 So.2d 89, 93 (Miss. 1987)).

¶24. M.R.E. 403 is as follows:

> RULE 403. EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION, OR WASTE OF TIME

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

M.R.E. 403.

¶25. Scott believes the direct examination that was asked of her did not "open the door" to allow Rule 404(b) evidence (testimony of prior drug sales) to be admissible to attack her credibility. Scott contends that this testimony was highly prejudicial to her case and that the allowance of this testimony constitutes error sufficient to have this case reversed and remanded for a new trial.

¶26. The State correctly asserts that the rebuttal testimony regarding prior drug sales was admissible and that the testimony was offered to rebut falsehoods offered by the defendant with specific instances of her previous conduct. The trial judge properly gave a limiting instruction to the jury directing on how to consider appropriately the prior sales of cocaine and explained that this testimony was presented only for the purpose of attacking Scott's credibility. Scott's counsel "opened the door" when he asked Scott if she had sold drugs to anyone on 12-4-97 or "ever." Also, Burrow's testimony was in contradiction to testimony offered by Scott and was limited for purposes of impeachment. This made the subsequent rebuttal testimony admissible. The trial judge did not err in allowing the State to present rebuttal testimony about alleged prior sales of cocaine by Scott.

### III. WAS THE RENDERED VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

¶27. Scott claims that the jury's verdict was against the overwhelming weight of the evidence. The standard of review is outlined in *Esparaza v. State*, 595 So.2d 418 (Miss.1992), where it was demonstrated that in a motion for j.n.o.v. testing the sufficiency of the evidence as a matter of law, the evidence must be viewed in the light favorable to the verdict. *Id*. at 426 (citing *May v. State*, 460 So.2d 778, 780-81(Miss. 1984)).

This Court also stated in *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983):

> We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand would be to sanction an unconscionable injustice. [citation omitted] Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal system.

*Accord, May*, 460 So.2d at 781-82.

¶28. Scott refers to the following said-to-be deficiencies in the evidence to support her belief that the jury's verdict was against the overwhelming weight of the evidence: (1) Jenny Burrow was the only witness that claimed Sarah Scott sold cocaine; (2) Burrow's testimony was disputed by other witnesses; was contrary to her prior written statement; and contradictory of Scott's testimony; and (3) there were errors in Burrow's statement on cross- examination regarding the date of the alleged sale, which side of the road Scott's house was located, Scott's weight and height, and the presence of a gold tooth in Scott's mouth the night of the alleged sale.

¶29. It is not necessary for each of these proposed deficiencies to be individually analyzed as most of them fall under the area of witness credibility. It is sufficient to consider a few of the areas the jury had to reconcile, such as Burrow's testimony regarding whether Scott owned a removable gold tooth and Burrow's slightly incorrect physical description of Scott (whose actual height and weight is 4'11" and 190 pounds, instead of the 5 feet and 150 pounds as described by Burrow in her written report). Viewing these in the light most favorable to the verdict to determine if the jury's verdict was against the overwhelming weight of the evidence, it is clear that any discrepancies present were minor at most and do not provide the legal basis necessary to establish that the jury's verdict was against the overwhelming weight of the evidence.

¶30. Scott also asserts that the conviction should not stand because Burrow's testimony was the only evidence presented that would support a conviction. This Court has previously upheld testimony of a single uncorroborated witness as sufficient to sustain conviction despite the fact that more than one person testified to the contrary. *Williams v. State*, 512 So.2d 670 (Miss. 1987). *Williams*, in detailing the function of the jury, referred to *Groseclose*, where this Court stated, "It is enough that the conflicting evidence presented a factual dispute for jury resolution." *Groseclose*, 440 So.2d at 300. "The strength or weakness of testimony is not measured by the number of witnesses." *Id*. (citing *Spiers v. State*, 231 Miss. 307, 94 So.2d 803 (1957)).

¶31. In *Watson v. State*, 465 So.2d 1025, 1030 (Miss. 1985), this Court found that a jury could weigh the credibility of the testimony of just two witnesses, one for the State and one for the defense. We refer to this Court's statements in *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980):

> This Court has in numerous cases, too many to mention, said that when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony. This wise rule applies with equal force to the state's witnesses and the appellant's witnesses, including the appellant himself. We have repeatedly held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the state or on behalf of the accused. In other words, the credibility of witnesses is not for the reviewing court.

(citing *Davis v. State*, 320 So.2d 789 (Miss.1975)); *Wilson v. State*, 264 So.2d 828 (Miss.1972); *McLelland v. State*, 204 So.2d 158 (Miss.1967)). There is no evidence present to support an assertion that the jury in Scott's case did not correctly perform its duty of resolving the conflicting testimony made by any of the witnesses.

¶32. Scott has not shown that the jury's verdict was against the overwhelming weight of the evidence and that she should receive a new trial. This proposition is without merit and is denied.

## CONCLUSION

¶33. For these reasons, the judgment of the Pike County Circuit Court is affirmed.

¶34. **CONVICTION OF UNLAWFUL DISTRIBUTION OF COCAINE AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, THE FIRST TEN (10) YEARS TO BE SERVED WITH THE REMAINING FIVE (5) YEARS TO BE SERVED ON POST RELEASE SUPERVISION AND PAYMENT OF A FINE IN THE AMOUNT OF $5,000.00, RESTITUTION IN THE AMOUNT OF $110.00 TO THE MISSISSIPPI BUREAU OF NARCOTICS, AND COURT APPOINTED ATTORNEYS FEES IN THE AMOUNT OF $500.00 AFFIRMED.**

> **SMITH, MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J.**

> **BANKS, PRESIDING JUSTICE, DISSENTING:**

¶35. Because I am of the view that the trial court erred in denying the defendant full cross-examination of a critical State's witness and in subjecting the defendant to cross-examination which should not have been allowed, I respectfully dissent.

I.

¶36. Sara Scott should have been free to pursue the indictment line of questioning with Ginny Burrow. Burrow had already admitted to indictments when she stated that she thought they had been dropped. Defense counsel should have been allowed to cross-examine about pending indictments to discover any pending deals that would or could have influenced her testimony.

¶37. M.R.E. 611(b) allows wide-open cross-examination, so long as the matter probed is relevant. *State Highway Comm'n v. Havard*, 508 So. 2d 1099, 1102 (Miss. 1987). The defendant is permitted to not only discredit the witnesses but to ferret out motives for their testimony. *Bevill v. State*, 556 So. 2d 699, 713-14 (Miss. 1990). The effect of not allowing Scott's counsel to cross-examine Burrow as to her pending indictments was that Scott was not given the opportunity to adequately confront the witness against her. *See Young v. State*, 731 So. 2d 1145, 1151 (Miss. 1999). The right of confrontation "extends to and includes the right to fully cross-examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony." *Myers v. State*, 296 So. 2d 695, 700 (Miss. 1974). The denial of full cross-examination of Burrow here is particularly prejudicial because there was no other witness who claimed to witness the alleged transaction.

¶38. While it is true that the bench conference regarding the objection was not recorded, the context in which this evidence was offered is clear from the record. The trial court ruled that the evidence was not admissible because it was not evidence of a conviction. Our rules of impeachment are not limited to prior conviction. This evidence should have been admitted pursuant to the provisions of M.R.E. 616. *See* ***Bradley v. State***, 562 So.2d 1276, 1281 (Miss. 1990).

## II.

¶39. The trial court also erred in allowing the prosecution to show prior drug sales by Scott. In holding that Scott opened the door to this examination, the majority misstates the question asked on direct examination. Maj. Op. ¶ 26. The record reflects that the question was not if she had "ever" sold drugs, but "***On 12-4-97 when, if ever***, did you sell drugs to anyone?" (emphasis added). The question was restricted to December 4, 1997, which is what she was on trial for. Defense counsel did not open the door to whether Scott had "ever" sold drugs. It was error to allow the State to rebut that which was never said. It was highly prejudicial and should command reversal and remand for a new trial.

**McRAE, P.J., JOINS THIS OPINION.**