## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-KA-01489-SCT

*L. C. WEEKS a/k/a L. C. WEEKS, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/09/1999 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WHITMAN D. MOUNGER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | JAMES H. POWELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/25/2001 |
| MOTION FOR REHEARING FILED: | 11/21/2001; denied 1/24/2002 |
| MANDATE ISSUED: | 1/31/2002 |

**BEFORE McRAE, P.J., DIAZ AND EASLEY, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1. The Grand Jury of Humphreys County, Mississippi, indicted the Appellant, L. C. Weeks, Jr. ("Weeks"), in Count I for possession of a firearm by a convicted felon and in Count II for capital murder. On July 8, 1999, the jury entered a verdict of guilty of capital murder and sentenced Weeks to serve a term of life imprisonment without eligibility of parole.

¶2. Weeks moved for a new trial or alternatively a JNOV. The motion was heard and denied by the trial court. Following this decision, Weeks perfected an appeal to this Court seeking relief in the form of reversal and in the alternative remand for a new trial.

## ISSUES

**I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE STATE HAD MADE A PRIMA FACIE SHOWING AND REQUIRING WEEKS TO GIVE RACE-NEUTRAL REASONS FOR HIS PEREMPTORY STRIKES.**

**II. WHETHER THE TRIAL COURT DEPRIVED WEEKS OF HIS RIGHT TO DUE PROCESS OF THE LAW, IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE 3, §14 OF THE MISSISSIPPI CONSTITUTION OF 1890, BY DENYING HIM THE USE OF THREE PEREMPTORY CHALLENGES BY SEATING VENIREMEN MALONE, CLEMENTS AND HEMPHILL AFTER DEFENDANT HAD OFFERED RACE NEUTRAL REASONS TO SUPPORT HIS PROPOSED STRIKES.**

**III. WHETHER THE TRIAL COURT DEPRIVED WEEKS OF HIS RIGHT TO DUE PROCESS OF LAW, IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, §14 OF THE MISSISSIPPI CONSTITUTION OF 1890, BY ARBITRARILY ALLOWING HIM LESS THAN THE TWELVE PEREMPTORY CHALLENGES ENTITLED TO HIM BY MISSISSIPPI CODE ANNOTATED §99-17-3.**

**IV. WHETHER THE TRIAL COURT ERRED IN ARBITRARILY REFUSING TO ALLOW WEEKS' *BATSON* CHALLENGE TO THE STATE'S PEREMPTORY CHALLENGE ON S-5 AS TO VENIREMAN CLAYTON AND THEREBY DEPRIVED WEEKS OF DUE PROCESS OF LAW.**

**V. WHETHER THE VERDICT OF THE JURY WAS THE RESULT OF PREJUDICE CREATED BY INFLAMMATORY STATEMENTS OF THE PROSECUTOR IN CLOSING ARGUMENT NOT BASED ON EVIDENCE IN THE RECORD; AS WELL AS, WHETHER THE TRIAL COURT FURTHER ERRED IN REFUSING TO GRANT WEEKS' MOTION FOR MISTRIAL WITH REGARD TO THIS PREJUDICIAL COMMENT.**

**VI. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT WEEKS'S MOTION FOR A MISTRIAL BASED ON THE DISTRICT ATTORNEY'S IMPROPER COMMENT REGARDING WEEKS'S RIGHT TO TESTIFY OR REMAIN SILENT UNDER AMENDMENT V OF THE UNITED STATES CONSTITUTION AND ARTICLE THREE, SECTION TWENTY-SIX OF THE MISSISSIPPI CONSTITUTION OF 1890.**

**VII. WHETHER THE TRIAL COURT ERRED IN DENYING WEEKS'S MOTION TO SUPPRESS.**

**VIII. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION IN LIMINE TO EXCLUDE ANY EVIDENCE OF SHERIFF JOHN ALLEN JONES'S CRIMINAL CONVICTION.**

**IX. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY VERDICT OF GUILTY OF CAPITAL MURDER.**

**X. WHETHER THE CUMULATIVE ERROR IN THIS CASE REQUIRES THAT THE CONVICTION BE REVERSED.**

## FACTS

¶3. On February 23, 1997, seven-year-old Shantwana Ross disappeared after a barbeque at the home of her grandfather, John Ross, in Belzoni, Mississippi. Sheriff John Allen Jones ("Sheriff Jones") of Humphreys County testified that he became involved in the investigation of the disappearance of Shantwana on February 24, 1997. Weeks came to the Sheriff's office on or about February 26, 1997, stating that it was his fault that Shantwana was missing because he saw her at a game room. Weeks later told Sheriff Jones about a dream of Shantwana on a gravel road with a levee, woods and water. Shantwana's body was found

on March 28, 1997, in Holmes County in an area similar to that described by Weeks. On March 16, 1997, Weeks told Sheriff Jones that as he was leaving the Rosses' house he got into the car, felt a thump and ran over Shantwana accidentally. Then Weeks put the child in his car, traveled south of Belzoni and placed her on the ground by a levee. The next day Weeks put the child into the water. On March 31, 1997, Weeks was formally charged with the murder of Shantwana, and he responded, "[y]ou've got the right man." Sheriff Jones and FBI Agent Barnes both heard this statement.

¶4. On February 23, 1997, the day Shantwana disappeared from her grandfather's barbeque, Weeks's girlfriend, Verna Gray ("Gray"), stated that Weeks was the last person outside from the party. After searching for Shantwana all night, Gray saw Weeks's car in his driveway about 6:00 a.m and his car was wet, as if newly washed. Approximately a week after Shantwana's disappearance, Weeks told Gray that he had a dream about the child's whereabouts, but he would not tell her the location.

¶5. Dr. Hayne, the state pathologist, testified that due to the advanced state of decomposition of the Shantwana's body, he could not give an exact cause of death. The cause of death was undetermined, but the manner of death was homicide. There was no consistent evidence that the body had been run over by a car. Fingerprint and hair samples were not recovered due to the advance state of decomposition of the body.

¶6. Juantray Bradford, a cellmate of Weeks in the Humphreys County Jail, testified that Weeks stated that he picked up the child and took her for a ride to Deovolente. February 23, 1997, was the same day Shantwana was discovered missing. Weeks had unsuccessfully attempted to have sex with Shantwana and then brought her home. Bradford volunteered this information to the police, and he was not acting as an agent for law enforcement at this time. After Bradford gave the police this information, he agreed to have a tape recorder placed in the cell to record any future conversations. **LEGAL ANALYSIS**

### I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE STATE HAD MADE A PRIMA FACIE SHOWING AND REQUIRING WEEKS TO GIVE RACE NEUTRAL REASONS FOR HIS PEREMPTORY STRIKES

¶7. Weeks contends that the trial court erred in finding that the State made a prima facie showing under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct.1712, 90 L.Ed.2d 69 (1986). Weeks further contends that because the prima facie showing was in error, he should not have been required to provide race-neutral reasons for his peremptory strikes. This Court finds this contention procedurally barred and without merit.

¶8. In *Batson*, the United States Supreme Court held that a peremptory challenge cannot be used to exclude venire-persons from jury service based on their race. *Batson v. Kentucky*, 476 U.S. 89, 106 S.Ct.1712, 90 L.Ed.2d 69 (1986). A peremptory challenge based on race constitutes a violation of due process. *Id*. at 98. Since the *Batson* ruling in 1986, the United States Supreme Court and this Court have extended the use of the rule to other circumstances. *See J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 114 S. Ct. 1419, 1422, 128 L.Ed.2d 89 (1994) (*Batson* extended to peremptory challenges based on gender); *Georgia v. McCollum*, 505 U.S. 42, 54,112 S.Ct. 2348, 2356, 120 L.Ed.2d 33 (1992) (defendant's use of peremptory challenges based on racial consideration was prohibited); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 628-29, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (*Batson* extended to civil cases); *Powers v. Ohio*, 499 U.S. 400, 409, 111 S. Ct. 1364, 1373, 113 L.Ed.2d 411 (1991) (race-based challenges by the State without regard to the race of the defendant were prohibited); *Thorson v. State*, 721 So.2d 590, 594 (Miss. 1998) (*Batson* extended to peremptory strikes based on

religion).

¶9. The necessary steps to resolve a peremptory challenge based upon *Batson* are cited in *Stewart v. State*, 662 So.2d 552, 557-58 (Miss. 1995) as follows:

> 1. The party objecting to the peremptory challenge must first make a prima facie showing that race was the criteria for the exercise of the peremptory challenge.
>
> 2. If this initial showing is successful, the party desiring to exercise the challenge has the burden to offer a race-neutral explanation for striking the potential juror.
>
> 3. The trial court must then determine whether the objecting party has met their burden to prove there has been purposeful discrimination in the exercise of peremptory challenges.

¶10. As cited above, the United States Supreme Court in *Georgia v. McCollum* extended *Batson* and held that "the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges. Accordingly, if the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants must articulate a racially neutral explanation for peremptory challenges." *McCollum*, 505 U.S. at 59.

¶11. Weeks did not object at trial concerning either the challenge to the State's invocation of *Batson*, nor to the lack of racial discrimination based upon appearance due to the racial makeup of the venire panel. Instead, Weeks offered race neutral reasons for each *Batson* challenge at trial and never complained at all of the racial dynamics of the venire-panel. This Court held in *Oates v. State*, 421 So.2d 1025, 1030 (Miss. 1982), that in order to preserve a question for appellate review, "[o]bjections to the admissibility of evidence must specifically state the grounds, otherwise the objection is waived." In addition, this Court held that "[i]f no contemporaneous objection is made, the error, if any, is waived." *Walker v. State*, 671 So.2d 581, 597 (Miss. 1995) (citing *Foster v. State*, 639 So.2d 1263, 1270 (Miss. 1994)). Applying the law to the case sub judice, Weeks waived these objections on appellate review and is procedurally barred on this issue.

¶12. Procedural bar and waiver aside, the trial judge found that the State established a prima facie showing of discrimination in Weeks's peremptory challenges and ultimately determined that as to *Batson*, Weeks failed to provide race-neutral reasons for some of his peremptory strikes. It must be remembered that this Court held that the trial judge is afforded great deference in determining if the expressed reasons for exclusion of a venire-person from the challenged party is in fact race-neutral. *Tanner v. State*, 764 So.2d 385, 393 (Miss. 2000). In *Stewart*, this Court held that "one of the reasons the trial court is granted such deference in a *Batson* issue is because the demeanor of the attorney making the challenge is often the best evidence on the issue of race neutrality. *Stewart*, 662 So.2d at 559. Furthermore, the determination of discriminatory intent will likely turn on a trial judge's evaluation of a presenter's credibility and whether an explanation should be believed. *Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). A reversal will only occur if the factual findings of the trial judge appear to be "clearly erroneous or against the overwhelming weight of the evidence." *Tanner*, 764 So.2d at 393 (citing *Stewart*, 662 So.2d at 558); *Davis v. State*, 551 So.2d 165, 171 (Miss. 1989).

¶13. The trial judge acted within her discretion on this issue, and her findings are not subject to reversal under the standard of review. Therefore, Weeks's contentions are without merit.

**II. WHETHER THE TRIAL COURT DEPRIVED WEEKS OF HIS RIGHT TO DUE PROCESS OF THE LAW, IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE 3, § 14 OF THE MISSISSIPPI CONSTITUTION OF 1890, BY DENYING HIM THE USE OF THREE PEREMPTORY CHALLENGES BY SEATING VENIREMEN MALONE, CLEMENTS AND HEMPHILL AFTER WEEKS HAD OFFERED RACE NEUTRAL REASONS TO SUPPORT HIS PROPOSED STRIKES.**

¶14. Weeks contends that his right to due process of the law was denied when his peremptory strikes were not granted by the trial judge. The three venire-persons in question are D-4 Malone; D-10 Clements; and D-11 Hemphill. This contention is without merit.

¶15. The State challenged all three peremptory strikes by Weeks under ***Batson***. The trial judge found a prima facie ***Batson*** case and requested race neutral reasons for the strikes from Weeks before making a ruling. Each venire-person will be addressed in turn.

¶16. In an effort to clarify the jury selection process, it is worthwhile to enumerate each of the defense's peremptory strikes. A defendant in a capital murder case is entitled to twelve (12) peremptory strikes. Miss. Code Ann. § 99-17-3 (2000). The trial record in the case sub judice has some confusion in the numbering of the twelve strikes. Weeks exercised peremptory strikes against the following venire-persons: D-1 Clifford, D-2 Summerlin, D-3 Ainsworth, D-4 Malone, D-5 Ryan, D-5 Asker, D-6 Simpson, D-7 Saxton, D-8 Rankin, D-9 Stribling, D-10 Clements, and D-11 Hemphill. Of these twelve peremptory strikes, the trial judge denied D-4, D-7, D-9, D-10 and D-11. While the list of peremptory strikes does show that the trial judge assigned D-5 to two venire persons (Ryan and Asker) the overall number of peremptory strikes exercised by Weeks and reflected in the trial record is twelve. Therefore, Weeks exercised the correct number of peremptory strikes as guaranteed by statute.

### A. D-4 Malone

¶17. The race neutral reason offered by Weeks for Malone concerned his failure to make a response on his "paperwork" and voir dire. The State refuted the unresponsive claim that Malone said "I agree with the death penalty. I feel that we have too many appeals, too many lawyers." The trial judge commented that Malone did make a statement. The defense stated that this statement was biased and prejudiced. The trial judge then denied Weeks's peremptory strike against D-4 Malone.

### B. D-10 Clements

¶18. The race neutral reason offered by Weeks for Clements concerned his occupation (financial analyst) and his responses on voir dire. Defense counsel asserted that Clements's occupation would make him a strong leader on the jury and his written responses indicated that he is affiliated with conservative groups. The State contended that these assertions should not exclude him from the jury. In addition, the State asserted that Clements's membership in the Republican Party, the First Baptist Church and his favoring the death penalty should not disqualify him. The trial judge then denied Weeks's peremptory strike against D-10 Clements.

### C. D-11 Hemphill

¶19. The race neutral reasons offered for Hemphill by Weeks concerned his written conservative views and

written and voir dire pro-capital murder status. The State and Weeks then argued whether Hemphill was conservative and whether he was "pro-death" according to his written and voir dire responses. The trial judge asked whether Hemphill's voir dire response was "pro-death." The defense responded that Hemphill "would vote death." Again, the State refuted the claim. At this point, the trial judge denied the peremptory strike against D-11 Hemphill. Curiously enough, the supplemental court papers for Hemphill's voir dire questions did not have his last page. Instead, the page, which incidentally had the response to a venire-person's feeling on the death penalty actually belonged to venire-person Lula Prestage. Prestage's response to the question "What is your opinion of the death penalty?" was "If there is no doubt in my mind then I'm for the death penalty."

¶20. It may be argued that one or all of the race-neutral reasons expressed by the defense are acceptable. However, it must be remembered that this Court has held that the trial judge is afforded great deference in determining if the expressed reasons for exclusion of a venire-person from the challenged party is in fact race-neutral. *Tanner*, 764 So.2d at 393. In *Stewart*, this Court held that "one of the reasons the trial court is granted such deference in a *Batson* issue is because the demeanor of the attorney making the challenge is often the best evidence on the issue of race neutrality. *Stewart*, 662 So.2d at 559. Furthermore, the determination of discriminatory intent will likely turn on a trial judge's evaluation of a presenter's credibility and whether an explanation should be believed. *Hernandez v. New York*, 500 U.S. at 365. In *Stewart* this Court, also, held that "[d]espite the importance of demeanor evidence, the trial court must consider all the relevant circumstances, such as the way prior peremptory strikes have been used and the nature of the questions poised on voir dire." *Stewart*, 662 So.2d at 559 (citing *Griffin v. State*, 607 So.2d 1197, 1202 (Miss. 1992). A reversal will only occur if the factual findings of the trial judge appear to be "clearly erroneous or against the overwhelming weight of the evidence." *Tanner,* 764 So.2d at 393 (citing *Stewart*, 662 So.2d at 558); *Davis v. State*, 551 So.2d at 171.

¶21. The trial judge witnessed the challenges in court and could observe the demeanor of all involved as well as all other relevant circumstances in the case. Her findings do not violate the clearly erroneous or against the overwhelming weight of the evidence standard. Therefore, this contention is without merit.

### III. WHETHER THE TRIAL COURT DEPRIVED WEEKS OF HIS RIGHT TO DUE PROCESS OF LAW, IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, §14 OF THE MISSISSIPPI CONSTITUTION OF 1890, BY ARBITRARILY ALLOWING HIM LESS THAN THE TWELVE PEREMPTORY CHALLENGES ENTITLED TO HIM BY MISSISSIPPI CODE ANNOTATED §99-17-3.

¶22. Weeks contends that his right to due process was violated by arbitrarily denying him less than the twelve peremptory challenges granted by Miss. Code Ann. § 99-17-3 (2000). Specifically, Weeks claims that the denial of five of his peremptory strikes resulted in the seating of these five venire-persons on the jury and the five unsuccessful peremptory strikes were counted toward the twelve total peremptory challenges granted under § 99-17-3. We find these contentions to be procedurally barred and without merit.

¶23. As listed in the previous issue, the trial transcript shows that the defense exercised twelve peremptory strikes on potential jury members, despite the incorrect numbering for each strike. The State challenged all of the twelve strikes under the *Batson* rule. Of the twelve strikes, the trial judge denied five strikes.

Defense counsel clearly *exercised* twelve peremptory strikes on the venire persons as demonstrated in the trial record. In essence, the defense did not use all the strikes in a proper manner.

¶24. The defense did not raise the issue of denial of less than twelve peremptory strikes at trial, therefore, the contention is waived for lack of objection and barred on appeal for review by the appellate court. *See Walker,* 671 So.2d at 597; *Oates*, 421 So.2d at 1030.

¶25. This Court has held in *Tanner v. State*, 764 So.2d at 393, that "great deference" is given to the trial court in determining whether an offered explanation is "truly a race neutral reason." A trial judge's factual findings will not be reversed concerning this issue "unless they appear clearly erroneous or against the overwhelming weight of the evidence." *Id*. at 393. (citation omitted). The trial court followed procedures for this case, and Weeks was part of this process. As such, he was not denied due process in this instance.

### IV. WHETHER THE TRIAL COURT ERRED IN ARBITRARILY REFUSING TO ALLOW WEEKS' *BATSON* CHALLENGE TO THE STATE'S PEREMPTORY CHALLENGE ON S-5 AS TO VENIREMAN CLAYTON AND THEREBY DEPRIVED WEEKS OF DUE PROCESS OF LAW.

¶26. Weeks contends that the trial court erred in refusing to allow a *Batson* challenge on Venireman S-5 Clayton. In specific, Weeks contends that the *Batson* challenge was made prior to the empaneling of the jury, during the *second* round of jury selection in which S-5 was stuck, and Weeks did not waive his rights by simply making his peremptory strikes prior to asserting a *Batson* challenge on S-5 Clayton. This Court finds that Weeks has made an inadvertent mistake in his reflection of the record, and we find the contention to be procedurally barred for lack of timely objection and without merit.

¶27. At the beginning of the jury selection process, the trial judge specifically addressed the *defense's question* concerning the appropriate time frame in which to make *Batson* challenges.

> The Court: Okay, with the *Batson* challenges, once the State tenders the defense a full panel, if the defense thinks that there is some *Batson* violations, you can give me your arguments at that time, and the Court will determine whether or not there's a prima facie finding of *Batson* violations, and then we'll take it from there. But once they've tendered the full panel, then you, if you see there's a *Batson* violation, then you can make your objection at that point.

¶28. During the first round of jury selection, the State struck S-1 through S-4 and tendered the panel to the defense. Prior to stating any defense peremptory challenge strikes, and in accordance with the judge's instructions for a timely *Batson* challenge, defense counsel requested "race-neutral reasons" for S-1 through S-3. Following the *Batson* challenges to these venire persons, the defense stuck D-1 through D-4 and tendered the panel to the State. During the *second* round of jury selection, the State made a *Batson* challenge for D-1 through D-4. Then, the State struck S-5 Clayton and tendered the panel to the defense.

¶29. At this point, the defense stuck D-5 through D-8 and the court tendered the panel to the State for the *third* round of jury selection. The State then made a *Batson* challenge to D-5 through D-8 and the judge ruled on each challenge accordingly. At the conclusion of the *Batson* challenges on D-5 through D-8, the defense requested a "race-neutral reason" for S-5 Clayton. The trial judge responded that the challenge had to be made at the time the panel is tendered. The defense acknowledged the trial judge's statement. The trial court then restated that the panel was tendered to the State and the process continued.

¶30. The record clearly reflects that the defense made a **_Batson_** challenge to S-5 during the _third_ round of jury selection, not the _second_ round as the defense inadvertently stated in the brief. The court tendered the second round of the jury panel to the defense with no objection to S-5 Clayton. Only during the third round of the jury selection panel and after the State challenged defense counsel's peremptory strikes on D-5 through D-8, did the defense make a **_Batson_** challenge to S-5 Clayton.

¶31. The trial judge gave specific instruction concerning the time frame in which to make a **_Batson_** challenge. Defense counsel, in effect, accepted S-5 Clayton by not objecting to the State's peremptory strike when the panel was tendered to them during _round two_ of the jury selection process. By waiting until the panel was tendered to the State for round three of the jury selection process, Weeks waived his objection to S-5 Clayton. _See **Walker**_, 671 So.2d at 597.

> ### V. WHETHER THE VERDICT OF THE JURY WAS THE RESULT OF PREJUDICE CREATED BY INFLAMMATORY STATEMENTS OF THE PROSECUTOR IN CLOSING ARGUMENT THAT WERE NOT BASED ON EVIDENCE IN THE RECORD; AS WELL AS, WHETHER THE TRIAL COURT FURTHER ERRED IN REFUSING TO GRANT WEEKS'S MOTION FOR MISTRIAL WITH REGARD TO THIS PREJUDICIAL COMMENT.

¶32. Within Issue V, Weeks raises two points, each of which will be addressed in turn. This Court finds contention one to lack merit and contention two to be procedurally barred for lack of a timely objection and without merit.

¶33. First, Weeks argues that the jury verdict was the result of prejudice caused by the State's inflammatory statements, not in evidence, during its closing argument. The specific statement and ensuing remarks are as followed:

> Now, [defense counsel] said, "Well, there's no evidence, no evidence that he (Weeks) ever went with anybody but adult women." And that's true. That's true. No evidence in this case of that. But if there was, ya'll wouldn't hear about it. You know that? **I mean we couldn't have introduced it if we had 20 seven-year-olds he tried to have sex with.** You couldn't have heard about it in this case. Would have been inadmissible.

(Emphasis added).

¶34. Counsel for Weeks objected without specificity. The State claimed that Weeks opened the door for this type of response. The trial judge sustained the objection and asked that the jury disregard the last statement. Defense counsel then requested a bench conference to discuss the remark. The State argued that defense counsel opened the door to the comment about sex with young girls citing the statement by witness Debra Ann Miller that she and Weeks had sex when she was fourteen-years-old. Defense counsel argued that the comment was not in evidence. The trial judge again sustained the objection on the record out of the hearing of the jury.

¶35. This Court has held that attorneys are allowed wide latitude in closing arguments. **_Holly v. State_**, 716 So.2d 979, 988 (Miss. 1998). Furthermore, this Court has held that "when the trial judge sustains an objection to testimony and he directs the jury to disregard it, prejudicial error does not result." **_Estes v. State_**, 533 So.2d 437, 439 (Miss. 1988). The jury is presumed to understand that the court disapproves

of any testimony when an objection is sustained. *Id*. at 439. Based on the above case law, the trial judge was within her discretion and her admonishment cured any prejudicial error.

¶36. Second, Weeks argues that the trial court erred in refusing to grant a motion for mistrial for the prejudicial comment. After the State finished their closing argument and the jury left the courtroom to begin deliberations, defense counsel objected for the second time to the State's comment concerning sex with minor girls. In this instance, defense counsel objected on the grounds that the comment was prejudicial and egregious because it suggested that Weeks was guilty of matters other than the current charges and requested a mistrial. The trial judge denied the motion for mistrial citing the previous direction that the jury disregard the statement.

¶37. This Court has held that trial judge is in the best a position to determine if an alleged objectionable remark has a prejudicial effect. *Roundtree v. State*, 568 So.2d 1173, 1177 (Miss. 1990). "The judge is provided considerable discretion to determine whether the remark is so prejudicial that a mistrial should be declared." *Id*. at 1778. If serious and irreparable damage has not occurred, then the trial judge should direct the jury to disregard the remark. *Id*. at 1778.

¶38. Applying the law to the facts in the case sub judice, we find that the trial judge did not abuse her discretion by denying Weeks's request for a mistrial. The trial judge sustained the objection to the closing comments in open court and directed the jury to disregard the remarks, thus curing any harm to Weeks. Later, the trial judge denied the request for a mistrial and cited her earlier order to the jury to disregard the comment.

### VI. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT WEEKS'S MOTION FOR A MISTRIAL BASED ON THE DISTRICT ATTORNEY'S IMPROPER COMMENT REGARDING WEEKS'S RIGHT TO TESTIFY OR REMAIN SILENT UNDER AMENDMENT V OF THE UNITED STATES CONSTITUTION AND ARTICLE THREE, SECTION TWENTY-SIX OF THE MISSISSIPPI CONSTITUTION OF 1890.

¶39. Weeks contends that the trial court erred in refusing to grant his motion for a mistrial for the State's improper comments pertaining to his right to testify or remain silent under the Fifth Amendment to the United States Constitution and Article 3, § 26 of the Mississippi Constitution of 1890. In specific, Weeks contends that the State's comments concerning his right to testify or remain silent amounts to reversible error and the case should be reversed and remanded for a new trial. This Court finds this contention to be without merit.

¶40. On cross-examination, the defense questioned FBI Agent Mike Beaver (Beaver) about the use of videotapes to record statements for accuracy. In the pretrial hearing, the prosecution agreed not to use the tapes in its case-in-chief, and the tapes were not used in trial. Beaver stated that Weeks did not make an admission on the videotape. Defense counsel continued in his line of questions concerning the general procedures and use of videotapes and indicated that Weeks apparently denied any involvement in the case.

¶41. During redirect examination the State questioned Beaver, concerning a videotape of Weeks and the following comment by the State is in contention.

Q. I notice that in asking you, notwithstanding all this stuff about the best evidence and the verbatim

being, I don't recall [defense counsel] asking you to play the tape. Do you?

A. No, sir.

Q. **Do you? I mean the best evidence of it, with his theory, wouldn't you expect him to run out and get a TV and plug this in and say, "See my client? He's innocent."**

(Emphasis added).

¶42. The defense requested a bench conference. The State did not object to the defense playing the videotape. Defense counsel objected on Fifth Amendment grounds. The trial judge overruled the objection stating that the defense opened the door in previous cross-examination questions concerning the videotape and the State had a right to rebut the testimony. At the close of the State's case, defense counsel renewed the objection concerning the videotape comments and moved for a mistrial based on prejudice to the jury. The trial court overruled the objection without comment.

¶43. On issues of comments concerning a defendant's failure to testify, each case shall be considered on an individual basis. *Logan v. State*, 773 So.2d 338, 348 (Miss. 2000) (citing *Conway v. State*, 397 So.2d 1095, 1099 (Miss. 1980)). "[T]he intention of the [prosecutor] is immaterial; the test is whether the language can be reasonably construed to be a comment upon the failure of the defendant to take the stand." *Logan*, 773 So.2d at 348 (quoting *Lambert v. State*, 199 Miss. 790, 793, 25 So.2d 477, 478 (1946)).

¶44. Considering the facts in the case sub judice, the defense questioned Beaver about the videotape. The videotape was not played to the jury. In fact, the prosecution agreed in the pretrial hearing not to use the tape at all in its case-in-chief. At one point, Beaver commented that Weeks did not make an admission. Defense counsel later commented that Weeks apparently denied involvement. The State, in an attempt rebut some of the defense's questions, merely stated that would seem reasonable in the *defense's theory* of the case to play the video to demonstrate *his client's innocence*. The prosecutor's comment cannot be either directly or by innuendo or insinuation be inferred to be a comment on Weeks' right to testify or remain silent. At most, the prosecutor speculated on defense counsel's theory of the case, not the defendant's right to remain silent. The trial judge was within her discretion to deny the motion for mistrial based on the prosecutor's comments.

## VII. WHETHER THE TRIAL COURT ERRED IN DENYING WEEKS'S MOTION TO SUPPRESS.

¶45. Weeks contends that the trial court erred in ruling three different statements were admissible. The first statement was from Weeks to Sheriff Jones. The second and third statements were from Weeks to Juantray Bradford ("Bradford"), a cellmate. The trial court determined that the alleged statement to Sheriff Jones and the first statement to Bradford were admissible, and the second statement to Bradford, a tape recorded conversation between Bradford and Weeks, was admissible under *Illinois v. Perkins*, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990), ruling that Weeks's Sixth Amendment rights had not attached and he was not entitled to *Miranda* warnings. This Court finds this contention to be without merit.

### A. Weeks's statements to Bradford, his cellmate

### 1. The tape-recorded conversation

¶46. As a preface, the second statement, concerning a tape-recorded conversation between Bradford and Weeks, was not entered into evidence. The prosecution agreed on the record before the trial judge to not use the tape recorded statement in its case-in-chief. Therefore, any discussion on this issue is moot.

## 2. First statement from Weeks to Bradford

¶47. Weeks generally cites the motion to suppress in his issue caption, but he never made any specific argument in his brief on the exclusion of this statement. He only specifically cites the tape- recorded statement in the brief. He does argue, however, that Bradford was an agent of the State. It is unclear whether this contention is made for the first statement. Therefore, the issues will be addressed.

¶48. During a suppression hearing, the trial judge sits as a fact finder. *Hunt v. State*, 687 So.2d 1154, 1160 (Miss. 1996). The trial judge can only be reversed for "manifest error if the decision is against the overwhelming weight of the evidence." *Id.*

¶49. The only testimony in the record relating to Bradford's status as an agent came from Sheriff Jones at the pretrial hearing and later Bradford himself at trial. Both testified that Bradford was not an agent of the State at the time of this first statement by Weeks. No testimony to the contrary was offered by the defense.

¶50. In light of the testimony and the holding in *Hunt*, the trial judge did not err, and the finding is not against the overwhelming weight of the evidence. Consequently, the trial judge's ruling on this issue is affirmed.

## B. Weeks's statement to Sheriff Jones

¶51. In addition, Weeks contends that the State failed to demonstrate that he waived his rights and the motion to suppress testimony from Sheriff Jones concerning a March 16, 1997, statement should have been granted. The main assertions are that (1) the right to counsel attached when he was charged with possession of a firearm, and (2) the right to counsel attached for the murder charge when he made a affirmative response, as evidenced by a circle and check on number three of the *Miranda* form.

¶52. The record does not reflect the exact date that Weeks was detained initially at the Humphreys County Jail, or the exact dates Weeks was charged with possession of a firearm or capital murder. However, it appears that Weeks was at the jailhouse on or before March 6, 1997, when Special Agent Beaver completed a report concerning Weeks's statements to Bradford. In any event, Sheriff Jones stated that on March 16, 1997, Weeks was being held on a weapons charge. Weeks signed a statement of *Miranda* Rights and Waiver of Rights form on March 4, 1997, and made a statement concerning the possession of a firearm charge. There was no testimony in the record to the effect that Weeks ever requested a lawyer. However, defense counsel implied at trial and also contend in their brief, that the check and circle around *Miranda* right number three, pertaining to a request for counsel, is an affirmative showing that Weeks invoked a right to counsel.

¶53. Sheriff Jones testified that on March 16, 1997, he received a call from the Chief Deputy stating that Weeks confessed and requested the Sheriff to go to the jail. Sheriff Jones arrived at the jail and read Weeks his *Miranda* rights. The State questioned Sheriff Jones about the Waiver of Rights form. In particular, Sheriff Jones testified that he checked each right as he read them as noted; Weeks refused to sign the document as noted, and despite refusing to sign the document Weeks orally agreed to speak with him about the information. The Sheriff testified that the statement was voluntarily given by Weeks. No right

to counsel was requested by Weeks. Sheriff Jones testified that Weeks stated he was at the Rosses' home drinking and when he left in his car he heard a thump. He came out of the car and saw the victim. At this point, Weeks was frightened and told Sheriff Jones that he put the victim into his car, drove south of Belzoni, and placed her body on the ground near the river. Later, Weeks returned and placed the body in the river. On cross examination, Sheriff Jones indicated that there was no statement signed by Weeks, only a police report.

¶54. This Court has held that "under both the United States and the Mississippi constitutions, an accused is entitled to be assisted by counsel during criminal proceedings against him." *Ormond v. State*, 599 So.2d 951, 956 (Miss 1992). *See* U.S. Const. amend. VI; Miss. Const. art. 3, § 26 (1890). The only difference between the two is the time of attachment. *Id*. In Mississippi the Sixth Amendment right attaches at the "accusatory stage." *Id*. (citing *Williamson v. State*, 512 So.2d 868, 876 (Miss. 1987)). "However, the defendant must be able to show some adverse effect or prejudice to his ability to conduct his defense before denial of this right to counsel constitutes reversible error." *Id*.

¶55. The United States Supreme Court has held that incriminating statements related to other crimes are admissible at trial for those offenses if the Sixth Amendment right to counsel had not yet attached at the time they were made. *McNeil v. Wisconsin*, 501 U.S. 171,176, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991). The Sixth Amendment right to counsel is "offense" specific and does not attach until prosecution begins, whereas the Fifth Amendment right to counsel would not bar questioning during an interrogation, if the suspect properly waived his Fifth Amendment right against self-incriminate and right to counsel. 111 S.Ct. at 2207-08.

¶56. The trial judge ruled all the evidence admissible and denied the motion to suppress. In regard to the tape-recorded statement of March 6, 1997, the trial judge ruled that no Sixth Amendment right had attached and no *Miranda* warning was necessary. Logically, this means that, as to all three statements, this determination would also apply to any statements by Weeks.

¶57. In the case sub judice, Weeks's Sixth Amendment right to counsel for the *murder charge* did not attach when he was charged with the possession of a firearm. Weeks was charged with murder on March 31, 1997, well after his March 16, 1997, statement to Sheriff Jones. As to whether Weeks ever invoked his Fifth Amendment rights, the trial judge sits as a fact finder. *Hunt v. State*, 687 So.2d at 1160. The trial judge's finding can only be reversed for "manifest error if the decision is against the overwhelming weight of the evidence." *Id.*

¶58. The Sheriff testified that Weeks did not invoke his rights as evidenced by the waiver form. The only indication that Weeks ever did invoke his rights is his assertion that the check and circle mark on number (3) three concerning a right to counsel signified his affirmation of right to counsel. However, the Sheriff explained that in the past he used to circle each right as he read them, but he later began to check each right, in conformity with other law enforcement. In this case, the Sheriff explained that he probably circled the right, saw the circle and then checked it so that it was all uniform. In light of these facts, the trial judge correctly ruled that Weeks's statement to the Sheriff was admissible. There was no showing of manifest error or that the finding was against the overwhelming weight of the evidence.

### VIII. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION IN LIMINE TO EXCLUDE ANY EVIDENCE OF SHERIFF JOHN ALLEN JONES'S CRIMINAL CONVICTION.

¶59. Weeks contends that the trial judge abused her discretion and erred in granting a motion in limine to exclude evidence of a past criminal conviction of the witness, Sheriff Jones. Weeks asserts that Sheriff Jones had two prior convictions punishable by imprisonment in excess of one year involving dishonesty or false statements. This Court concludes that the issue is procedurally barred for lack of a specific and timely objection at trial and the contention is without merit.

¶60. The State presented a motion in limine to exclude questions concerning Sheriff Jones's prior convictions based on the age of the prior convictions. The trial judge granted the State's motion in limine without comment. At this time, the defense made no initial objection. Prior to Sheriff Jones's testimony, a bench conference occurred in which defense counsel contended that M.R.E. 609 allowed exceptions. A discussion ensued in which the State claimed that *no written notice* was received from the defense to use the testimony. The trial judge again granted the motion without comment. Defense counsel's only response was to request the proffering of the information at a later time.

¶61. The defense did not state a specific objection at the pretrial motion hearing pertaining to this assertion. The defense only referenced an "exception." In addition, defense did not raise this assertion during the trial. As previously noted, this Court held in *Oates v. State*, 421 So.2d at 1030, that in order to preserve a question for appellate review, "[o]bjections to the admissibility of evidence must specifically state the grounds, otherwise the objection is waived." In addition, this Court held that "[i]f no contemporaneous objection is made, the error, if any, is waived." *Walker v. State*, 671 So.2d at 597 (citing *Foster v. State*, 639 So.2d at 1270). Applying the law to the case sub judice, Weeks is procedurally barred on this issue for lack of a specific objection during the pretrial motion hearing and lack of a timely objection at trial.

¶62. Procedural bar and waiver aside, this Court held in *Wilcher v. State*, 697 So.2d 1087, 1102 (Miss. 1997), that the trial court did not abuse its discretion by excluding a sheriff's seven-year-old prior extortion conviction. In *Wilcher*, the admissibility of the sheriff's conviction "was within the trial judge's discretion, depending on whether he found that the probative value of the conviction outweighed the prejudicial effect of its admission." *Id.* at 1103. In the case sub judice, the trial judge had the discretion as to the admissibility of this evidence, and there was no abuse of discretion.

¶63. Furthermore, M.R.E. 609 (b) clearly states that in order for evidence of a prior conviction that is more than ten years old, as calculated in the rule, to be admissible, the proponent must give the opposing party *advanced written notice*. Weeks did not provide the written notice in this case; and therefore, the objection is waived. In addition, the record excerpts only show the date that the sheriff was to begin his confinement, which was more than ten years prior to the trial date. The excerpts lack an actual date of release from detention, and there is no verification of anything other than the conviction and the initial date the sheriff was confined. Therefore, under Rule 609, the conviction was not admissible because it was over ten years old at the time of trial.

## IX. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY VERDICT OF GUILTY OF CAPITAL MURDER.

¶64. Weeks contends that of the evidence is not legally sufficient to support the jury verdict of guilty of capital murder and the trial court abused its discretion in denying a motion for new trial. While the defense fails to cite the issue of overwhelming weight of the evidence in the issue caption, it is addressed in the body of the brief. Therefore, both legal sufficiency and weight of the evidence will be addressed in this contention.

This Court finds that the assertions are without merit.

¶65. Weeks was indicted for the capital murder of Shantwana Ross on August 25, 1997, in violation of Miss. Code Ann. § 97-3-19(e) which provides:

> The killing of a human being without the authority of law by any means or manner shall be capital murder in the following cases: (e) When done with or without any design to effect death, by any person engaged in the commission of the crime of ...kidnaping...

¶66. As to legal sufficiency, this Court held in ***Pinkney v. State***, 538 So.2d 329, 353 (Miss. 1988), that reversal can only occur when evidence of one or more of the elements of the charged offense is such that "reasonable and fair minded jurors could only find the accused not guilty." (citations omitted).

¶67. As to the weight of the evidence, this Court held in ***McFee v. State***, 511 So.2d 130, 133 (Miss. 1987), that it has limited authority to interfere with a jury verdict. The Court looks at all the evidence in the light that is most consistent to the jury verdict. ***Id***. The prosecution is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." ***Id***.

> [I]f there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgement might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

***Id***. at 133-34.

¶68. In the case sub judice, the evidence met the legal sufficiency test and the weight of the evidence tests for considering a motion for a JNOV and a new trial. The main evidence showed that the victim, Shantwana Ross, was found dead on March 28, 1997, by a levee in Holmes County. The State pathologist determined that Shantwana was a homicide victim, even though the exact cause of death was undetermined due to the advanced state of decomposition of her body. Testimony by Gray indicated that the victim was last seen going outside in the vicinity of Weeks. Sheriff Jones testified that Weeks told him that after running over the victim, he placed her in his car and took her to an area with a levee, woods and water. In addition, Bradford testified that Weeks confided in him in the Humphreys County Jail. Weeks told Bradford that he put the victim in his car and took her to Deovolente in an attempt to have sex with her, but later returned her home. Based on all evidence received at trial, the jury found Weeks guilty of capital murder beyond a reasonable doubt. This Court finds Weeks's contention to be without merit.

### X. WHETHER THE CUMULATIVE ERROR IN THIS CASE REQUIRES THAT THE CONVICTION BE REVERSED.

¶69. Weeks contends that the conviction should be reversed based upon individual numerous errors. These errors are listed as erroneous rulings on pretrial motions, jury selection process, in the course of the trial, and in the closing arguments. In the event this Court finds no individual error, then, the case should be reversed based upon the impact of cumulative error. This Court finds this contention without merit.

¶70. In ***Wilburn v. State***, 608 So.2d 702,705 (Miss. 1992), this Court held that "individual errors, not reversible in themselves, may combine with other errors to make up reversible error." The question that must be asked in these instances is whether the defendant was deprived of a "fundamentally fair and

impartial trial" as a results of the cumulative effect of all errors at trial. *Id*. If there is "no reversible error in any part, so there is no reversible error to the whole." *McFee v. State*, 511 So.2d at 136.

¶71. Finding no reversible error for each individual issue, we find that there is no cumulative effect for all the alleged errors and, therefore, Weeks had a fundamentally fair and impartial trial. This contention is without merit.

## CONCLUSION

¶72. The issues raised by the Weeks are either procedurally barred or without merit and do not support the basis for a reversal of the judgment based on the jury verdict. Therefore, the judgment of the Humphreys County Circuit Court is affirmed.

¶73. **CONVICTION OF CHARGE OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT BENEFIT OF PAROLE, AFFIRMED.**

> **McRAE, P.J., SMITH, MILLS AND DIAZ, JJ. CONCUR. WALLER, J. CONCURS IN RESULT ONLY. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J., AND COBB, J.**

> BANKS, PRESIDING JUSTICE, DISSENTING:

¶74. I am compelled to dissent because it appears that both the trial court and now the majority have allowed the horrendous nature of the case to override due process of law. The majority ignores our precedents with respect to jury selection, the preservation of error, and the right to impeach a prosecution witness.

### I.

¶75. The defendant in this case was tendered prospective jurors all of whom were white save one. Yet when he exercised three peremptory challenges which were predictably against whites, the court found a prima facie case of racial discrimination and required him to assert race neutral reasons. Race neutral reasons were in fact asserted but the court eventually seated, not one, but three jurors over his objection. This is clear error.

¶76. First there is no prima facie violation. The mere fact that only whites are struck when only whites are tendered cannot be a prima facie violation. *Stewart v. State*, 662 So.2d 552, 557-58 (Miss. 1995). Assuming for the sake of argument, the patently ridiculous assertion that the defendant was required to strike the only black prospective juror tendered in order to avoid a prima facie case of discrimination, surely that prima facie case is limited to one strike. Obviously, he can only keep the sole black juror as a racial preference to one white juror, not three. Weeks should never have been called upon to give race neutral reasons. *See Batson v. Kentucky*, 476 U.S. 79, 96, 106 S. Ct. 1712, 1722-23, 90 L. Ed. 2d 69 (1986). The case should be reversed for that reason alone.

¶77. Moreover, the reasons given were in fact race neutral. We have said that the reasons given must be measured in light of the strength of the prima facie case. *Mack v. State*, 650 So.2d 1289, 1298 (Miss. 1994) (stating that *Batson* challenges must be viewed in light of the relative strength of the prima facie case

of discrimination) . Where, as here, there is no prima facie case, our course should be clear. I would reverse this conviction and remand for a fair trial.

## II.

¶78. With regard to the sheriff's bribery conviction, in short, there is no requirement that one "object" to the grant of a motion in limine asserted by a party opposite seeking to exclude evidence. It is enough to oppose the motion. *Kettle v. State*, 641 So.2d 746, 748 (Miss. 1994). *See also Uptain v. Huntington Lab, Inc.,* 723 P.2d 1322, 1330-31 (Colo. 1986); *Wimer v. Hinkle*, 379 S.E.2d 383, 386 (W. Va. 1989). Weeks clearly opposed this motion.

¶79. The record reflects that the State made a motion to exclude the evidence of the conviction immediately prior to calling Sheriff Jones, asserting that the conviction was "too old under the rule." The motion was granted. The sheriff was called to the stand whereupon counsel for the defense immediately asked for a bench conference to "re-visit" the issue. Counsel then admitted that the conviction was more than ten years old but advised the court that according to his reading of the rules there were exceptions which permitted the use of older convictions.

¶80. The State then asserted the notice requirement, to which counsel responded that the State certainly had actual notice as evidence by the fact that it was prepared to move in limine to exclude the evidence. The court, once again, granted the motion without explanation. Counsel reserved the right to make a proffer of the conviction. Thereafter, prior to cross-examining the sheriff, a proffer was made of the certified copy of conviction. Clearly the issue is properly preserved. *Settles v. State*, 584 So.2d 1260, 1265 (Miss. 1991) (citing *Saucier v. State*, 562 So. 2d 1238, 1245 (Miss. 1990)).[1]

¶81. The evidence proffered shows that the conviction is more than ten years old. It shows additionally, however, that the sheriff was sentenced on January 3, 1989 to a period of incarceration of eighteen months. The trial of this case was conducted in July 8, 1999. Rule 609 governing the admissibility of previous convictions for impeachment, provides that the ten year period is measured from the "date of the conviction or of the release of the witness from confinement imposed for that conviction, *whichever is later*." M.R.E. 609 (emphasis supplied).

¶82. If the sheriff in fact served eighteen months or even six months and 6 days, from January 3, 1989, the ten-year period would not have expired. While the record is not clear as to when the sheriff was released from confinement, an inference can be drawn that it was within the ten-year period. If so, the ten-year rule simply does not apply to this conviction.

¶83. It is my view, however, that the trial court erred in granting the motion, even assuming that the ten year rule applies. Clearly, the State had adequate notice of the defendant's intent to use the conviction. We have found actual notice and the absence of prejudice curative of any failure to give written notice. *Evans v. Boyle Flying Serv., Inc.,* 680 So.2d 821, 826-27 (Miss. 1996); *Horne v. Green*, 52 Miss. 452, 453-54 (1876).

¶84. The sheriff's credibility in this case is crucial. He testified to admissions which he attributed to the defendant and of which he is the only witness. His credibility is central. Moreover, he is a witness not a defendant. We have observed that it is the rare case where prejudice to a mere witness can overcome the probative value of impeachment evidence. *Young v. State*, 731 So.2d 1145, 1151 (Miss. 1999) (stating

that where a witness is not a party, any prejudice to him is irrelevant).

¶85. I would reverse this case and remand to the circuit court for a new trial for each of the reasons enumerated above.

**PITTMAN, C.J., AND COBB, J., JOIN THIS OPINION.**

1. In *Saucier,* we held that in order to preserve the issue whether a court erred in ruling on a motion to limit use of prior convictions the criminal defendant is required to proffer the testimony that he would have offered but for the ruling. 562 So. 2d at 1245.