929 So.2d 946 (2005)
Nigel Jerome McCLAIN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00152-COA.
Court of Appeals of Mississippi.
September 6, 2005.
Rehearing Denied January 24, 2006.
*947 Jeffrey Lynn Ellis, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before BRIDGES, P.J., MYERS and CHANDLER, JJ.
BRIDGES, P.J., for the Court.
¶ 1. Nigel Jerome McClain was indicted by a grand jury in the Circuit Court of Forrest County for one count of sexual battery and a second count of felonious child abuse, and after hearing all the evidence and arguments of counsel, a jury convicted him on both counts. McClain was sentenced to a term of forty (40) years for sexual battery and a term of twenty (20) years for felonious child abuse on October 7, 2003. McClain subsequently filed a post-trial motion to set aside the jury verdict, or in the alternative, for a new trial; however, the motion was denied by the circuit court. Aggrieved by the denial, McClain has effectuated this appeal and presents the following two issues for our review:

*948 I. DID THE TRIAL COURT ERR IN ALLOWING THE STATE'S EXPERT TO TESTIFY AND RENDER OPINIONS OUTSIDE HIS AREA OF EXPERTISE?

II. DID THE TRIAL COURT ERR BY ALLOWING HEARSAY TESTIMONY OF DR. GAUDET REGARDING THE TREATMENT ADMINISTERED TO THE CHILD WHILE A PATIENT AT THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER AND IN ALLOWING THE HEARSAY TESTIMONY OF DR. GAUDET REGARDING THE OPINIONS OF PHYSICIANS WHO CARED FOR THE CHILD WHILE A PATIENT AT SAID MEDICAL CENTER?
Finding McClain's argument to be without merit, we affirm.

FACTS
¶ 2. On February 3, 2003, E.B. testified that she left her home at 7:45 a.m. to go to work. When she left her home, her three-year-old son Aaron was asleep in his room, and McClain was asleep in the couple's bed with her eight-month-old daughter Ashley.[1] E.B. further testified that she did not change Ashley's diaper before she left for work. McClain stated that he awoke around 10:00 a.m., and began gathering the children's things because his cousin, Martha Young, was coming to pick them up. Young testified that she arrived at the home between 10:00 a.m. and 11:00 a.m., and that she helped McClain dress the children. Young testified that when she changed Ashley's diaper that morning, the child had a runny bowel movement. Young further testified that she did not see any marks or bruises on the child at any point that day. Young, McClain, and the children left E.B.'s home and went to Young's house, from which Jermell Young, Nigel McClain, Rochelle McClain, and the children departed for Marshall Durbin between 12:00 p.m. and 12:30 p.m. Rochelle McClain testified that she remained in the car with the children the entire time Nigel McClain and Jermell Young were inside Marshall Durbin. Rochelle McClain further testified that she fed and changed Ashley while in the car at Marshall Durbin. When the men returned to the car around 3:00 p.m., the group returned to Young's house, where they remained until it was apparent that something was wrong with Ashley. Nigel and Rochelle McClain took the child with them to pick up E.B. at her home, from which the group proceeded to Forrest General Hospital.
¶ 3. Dr. John Wells Gaudet was the State's expert witness in the field of pediatric medicine. Dr. Gaudet saw the child at Forrest General Hospital on the day in question. In his testimony, Dr. Gaudet described the child's physical condition, which consisted of marks on her chest and multiple bruises. Dr. Gaudet also gave testimony regarding the child's treatment at the University of Mississippi Medical Center ("UMMC").
¶ 4. Officer Mark Allen Berry of the Hattiesburg Police Department testified that he received a call to go to the Forrest General Hospital on February 3rd, regarding the possible abuse and sexual abuse of an infant. Officer Berry advised McClain of his Miranda rights, after which McClain signed a form explaining his Miranda rights and a waiver of these rights. McClain was subsequently indicted, tried by a jury of his peers, and convicted of the crimes of sexual battery and felonious child abuse. On October 7, 2003, McClain was sentenced to a term of forty (40) years on the count of sexual battery and a term of twenty (20) years on the count of felonious *949 child abuse, with the sentences to run concurrently in the custody of the Mississippi Department of Corrections.

LAW AND ANALYSIS
¶ 5. According to this Court's standard of review, the admissibility of evidence rests within the trial court's discretion. Wade v. State, 583 So.2d 965, 967 (Miss.1991). Unless judicial discretion is abused, the reviewing court will not reverse the trial court's ruling. Lewis v. State, 573 So.2d 719, 722 (Miss.1990). Furthermore, the qualifications of an expert in a field of scientific knowledge is left to the sound discretion of the trial judge, and thus, the judge's determination will not be reversed unless it clearly appears that the witness is not qualified. Wilson v. State, 574 So.2d 1324, 1334 (Miss.1990).

I. EXPERT TESTIMONY
¶ 6. McClain claims that the trial court erred in allowing the State's expert witness, Dr. Gaudet, to testify and render opinions outside his area of expertise. McClain claims that the doctor's testimony was inadmissible, as the record is devoid of any evidence that would support the proposition that Dr. Gaudet had any training or experience in the forensic analysis of footprints or shoe prints. Additionally, McClain argues that the doctor's testimony is the only evidence from which the jury could conceivably conclude that the injuries sustained by Ashley were intentional rather than accidental, and thus, the felonious child abuse conviction should be reversed.
¶ 7. The direct testimony of Dr. Gaudet regarding the alleged footprint reads as follows:

By Mr. Gaddis:
Q. Doctor, let me ask some questions about that photograph, and in particular the chest area of the child. Did you find anything peculiar about the bruising of the child's chest?
A. Yes.
Q. Would you explain that to the jury, please.
A. One of the things I noticed immediately upon assessing the child is she had multiple bruises on her chest and abdomen. There's not only some bruising but some lighter markings that were evident. It doesn't show up in the photograph. Can they see the photograph?
Q. They can see the photograph over here. If you could, point to where you saw it.
A. It doesn't show up in the photograph, but there was an [un]usual appearance to her bruising. Essentially, she had a footprint on her chest and abdomen.
Mr. Davis: Objection, Your Honor. Objection. Until he can establish how he arrived at that opinion, Your Honor, then I'm going to have to object because there has been no evidence offered that would say this gentlemen qualifies to make that opinion.
The Court: I'm not following your objection, Mr. Davis. Are you saying you're objecting because there's no evidence to indicate how he arrived at that conclusion?
Mr. Davis: Yes, Your Honor. I'm basically saying that he is making a statement to facts which has actually not been established.
The Court: I think I'm going to sustain the objection. I think the objection is to the point, Mr. Gaddis.
Mr. Gaddis: I understand. I'll lay some more predicate.

*950 By Mr. Gaddis:
Q. Dr. Gaudet, do you know what a footprint looks like?
A. Yes.
Q. Do you know what the shape of a shoe is?
A. Yes.
Q. Describe the shape of the bruises on the chest of [Ashley].
A. The bruising, starting at the area of the belly button going a little bit higher in the middle of her chest, was in the shape similar to that of the bottom of a shoe. It had more of an oblong top and then a little indentation kind of in the middle and then sort of a semicircular base about here . . . And there were little ridges, the little lines.
Q. Corresponding to what on a shoe?
A. Well, it's analogous to the sole of a shoe that the markings within this bruise and red area had little lines that were similar to those that you might see on the sole of a shoe.
Q. Was it a linear pattern, design?
A. Yeah, little wavy lines. Yes.
Mr. Gaddis: Your Honor, I didn't mark this, could I have it marked at this time?
The Court: Yes. S-4 has not been marked?
Mr. Gaddis: It was admitted but not marked.
The Court: Have it marked.

(PHOTOGRAPH MARKED AS STATE'S EXHIBIT 4 AND RECEIVED INTO EVIDENCE)
After the State laid more predicate, the counsel for McClain did not renew his objection to Dr. Gaudet's testimony. Rule 103(a) requires "a timely objection . . . stating the specific ground of objection, if the specific ground was not apparent from the context . . ." when the ruling is one admitting evidence. M.R.E. Rule 103(a). The Mississippi Supreme Court has held that an objection must be made with specificity to preserve error for appeal, and therefore, failure to object on grounds that Dr. Gaudet was not an expert in the area of forensic analysis of a shoe print, waives the argument on appeal. Oates v. State, 421 So.2d 1025,1030 (Miss.1982). Accordingly, this issue is procedurally barred.
¶ 8. However, for the sake of argument, we will address the merits of the claim. Under Rule 702 of the Mississippi Rules of Evidence, Dr. Gaudet is allowed to assist the jury in understanding the evidence by presenting his opinion of the child's injuries so long as he is "qualified as an expert by knowledge, skill, experience, training, or education . . . . [and] (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." M.R.E 702. Under the guidance of Rule 702, Dr. Gaudet could explain the nature of the injury to the child and the instrument which may have caused the bruising. In McGowen v. State, a forensic pathology expert stated the shape of a mallet was consistent with the shape of the wounds on the victim's head after comparing photographs depicting the wounds. McGowen v. State, 859 So.2d 320, 335 (¶ 54) (Miss. 1993). McGowen argued that the expert witness was not a tool-mark comparison expert, and thus, the expert's testimony was improper. Id. However, the Mississippi Supreme Court held that a forensic pathology expert may offer an expert opinion at trial about whether a particular instrument in evidence was consistent with particular injuries to a victim. Id. at 336 (¶ 57). In Duplantis v. State, the court refused to say the trial court abused its *951 discretion when it allowed a forensic pathologist to testify in a murder trial that the wounds suffered by the victim were inflicted by an object similar to bolt cutters recovered from the victim's truck. Duplantis v. State, 708 So.2d 1327, 1338-39 (¶ 45) (Miss.1998). In the present case, Dr. Gaudet's testimony as a pediatrician simply described the shape of the injury on Ashley's body, and his testimony was probative of the causes of injuries to the child. Therefore, we cannot say the trial court abused its discretion in allowing said testimony at trial.

II. HEARSAY TESTIMONY
¶ 9. McClain claims that the extent of Dr. Gaudet's treatment of Ashley was triage, resuscitation, and stabilization so she could be transported to UMMC, and therefore, his testimony regarding the treatment administered to Ashley while at UMMC is hearsay, as he lacks personal knowledge of the condition and treatment of her internal injuries after she left his care at Forrest General Hospital. Furthermore, McClain argues that the State should have called a treating physician from UMMC to testify to Ashley's injuries and treatment, instead of allowing Dr. Gaudet to testify with his notes, which consisted of his conversations with the other treating physicians and Ashley's medical records. McClain claims that if, in the alternative, the court holds that this error was not preserved by objection at trial, the Court should consider the erroneous admission of the testimony to be plain error. The record does not reflect any objection to the admission of Dr. Gaudet's testimony, aided by his notes, regarding Ashley's internal injuries and the surgical treatment thereof. As M.R.E. 103(a) requires a timely objection to preserve error for appeal, failure to object on grounds that the testimony is hearsay, waives the argument on appeal. Oates, 421 So.2d at 1030. Finding this issue to be procedurally barred for failure to make a contemporaneous objection, McClain now relies on the doctrine of plain error to address this issue.
¶ 10. "A defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment on appeal." Foster v. State, 639 So.2d 1263, 1289 (Miss.1994). The Mississippi Supreme Court, on occasion when circumstances warranted, has noted the existence of errors in trial proceedings affecting substantial rights of the defendants, although they were not brought to the attention of the trial court. Grubb v. State, 584 So.2d 786, 789 (Miss.1991). The plain error doctrine has been construed to include anything that "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).
¶ 11. Mississippi Rule of Evidence 703 regarding the basis of opinion testimony by experts states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." M.R.E. 703. Mississippi Rule of Evidence 803(4), which states the exceptions to the hearsay rule, allows "[s]tatements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, if the court, in *952 its discretion, affirmatively finds that the proffered statements made under circumstances substantially indicating their trustworthiness," regardless of the availability of the declarant. M.R.E. 803(4). The comment to Rule 803(4) states that the rule eliminates any distinction made between narrative statements made to a treating physician and those made to an examining physician who was retained for use as an expert witness in litigation and permits statements made both for treating and diagnostic purposes. Therefore, the statements made to Dr. Gaudet by the other treating physicians are admissible. Additionally, the medical records included in Dr. Gaudet's testimony would have otherwise been admissible under Rule 803(6), as the medical records would have been presumed reliable since they were kept in the ordinary course of business. M.R.E. 803(6). Although Dr. Gaudet was not physically present during the child's treatment and surgical operations, which took place after she left his immediate care, he consulted with her treating physicians at UMMC regularly, and after discussing her treatment with the UMMC physicians and reviewing her medical records, he testified to the treatment of her injuries without objection. For the foregoing reasons, the admission of the testimony cannot be viewed as plain error.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF COUNT I OF SEXUAL BATTERY AND SENTENCE OF FORTY YEARS AND COUNT II OF FELONIOUS CHILD ABUSE AND SENTENCE OF TWENTY YEARS, WITH SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
KING, C.J., LEE, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
NOTES
[1] For purposes of anonymity, the names of E.B's children have been changed.