# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-00562-SCT

*EVERETT BOYD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/09/2006 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BERNARD C. JONES, JR. |
| | LAURA SKEEN KUNS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  BILLY L. GORE |
| DISTRICT ATTORNEY: | JAMES H. POWELL, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/20/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., DICKINSON AND LAMAR, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.    The defendant was convicted of murder while engaged in the crime of drive-by shooting and shooting into an occupied dwelling. On appeal, he argues several issues and requests that his conviction be overturned.  Finding no reversible error, we affirm the circuit court's disposition.

### STATEMENT OF FACTS AND PROCEEDINGS

¶2.    Everett Boyd, Michael O'Neal, L.C. Gibson,  and Charles Adams were out drinking. The four men were at Boyd's house when O'Neal, who was extremely intoxicated,  pulled out his pistol and shot into the air.  O'Neal then returned to his house in Lexington, where

he resided with his girlfriend, Glenda Hoover, and their three children. There, outside his house, he was shot and killed by a forty-five caliber handgun.

¶3. Holmes County Deputy Sam Chambers observed a broken bedroom window and what appeared to be "a bullet hole out in the back wall about . . . a foot or less from the ceiling." No firearms, bullets, or shell casings were found at the scene.

¶4. Several witnesses, including Hoover, identified Boyd as the killer. Hoover testified that, soon after O'Neal arrived home, she heard a car pulling up outside. When O'Neal stepped outside the house to investigate, an altercation ensued. Although Hoover stayed inside the house and did not see the incident, she testified she had known Boyd for eight years as O'Neal's friend, and she recognized his voice. Seconds later, Hoover heard two gunshots. A bullet entered through her bedroom window. After she heard the car drive off, Hoover went outside and discovered O'Neal, staggering and collapsing. After trying to resuscitate him, she summoned an ambulance. O'Neal died at the hospital later that night.

¶5. Soon after the shooting, Hoover received two calls from Boyd. She called 911 and summoned her father, Glenn Brown, and O'Neal's father, John Pilgram, to the scene. Boyd arrived at the scene shortly thereafter. Claiming he was innocent, Boyd stated that O'Neal had shot himself.

¶6. The next day, Brown handed over a nine-millimeter Luger handgun to the police, which he said was given to him by Pilgram. He identified it as belonging to O'Neal because he saw the gun ". . .when [Michael] first bought it." Pilgram testified that, after finding the gun on the front seat of O'Neal's vehicle on the night of the murder, he had handed it to Brown.

2

¶7. Additionally, Hoover found a bullet inside her house, underneath a broken glass window, a day or two after the incident. She gave the bullet to Deputy Chambers who provided it to Brian McIntire, a forensics expert. McIntire determined the bullet was a forty-five round which could not have been fired from the nine-millimeter handgun which had belonged to O'Neal.[1] Furthermore, the entrance wound was consistent "with a large caliber projectile, including a forty-five caliber projectile."

¶8. Dr. Steven Hayne, a forensic pathologist, testified that, for a short distance after the bullet exited O'Neal's body, it would have been traveling with sufficient velocity "to penetrate or perforate a half-inch piece of wood."[2] Additionally, he said, the wound inflicted on O'Neal "would be consistent with the decedent in a standing position receiving a gunshot wound through the chest."

¶9. Both L.C. Gibson and Charles Adams testified that, at the time of the murder, they saw Boyd converse with O'Neal, get back in the car, and fire two shots out of the window. They also testified that Boyd told them that he wanted to shoot the gun in front of O'Neal's house and wake his "folks" the same way O'Neal did Boyd's. However, in their original statements to police, Gibson and Adams claimed they did not hear or see Boyd shooting a gun because they were too intoxicated. They claimed they did not tell the detectives the truth because, at the time, they were scared and did not want to get involved.

---

[1]Specifically, the inch equivalent for a nine-millimeter is .355.

[2]There was some testimony that a second bullet which could not be removed struck Hoover's bedroom wall a foot or so below the ceiling. Additionally, the forensics expert asserted that "if the gun was inside the car at the time that it was fired, the chances would be greater that the cartridge case . . . would stay inside the car as it was ejected from the firearm."

3

¶10.    Boyd told Deputy Chambers that he owned a thirty-eight revolver that was in a layaway in Grenada.  He added that O'Neal owned "a .9 or a .380. Maybe a .45."

¶11.    The jury returned a verdict of guilty against Boyd for the murder of O'Neal while engaged in the crime of drive-by shooting and for shooting into an occupied dwelling.  The trial court sentenced Boyd to serve a term of life imprisonment on the first count and a concurrent term of ten years' imprisonment on the second count.  Boyd timely perfected his appeal, which we now consider.

**ANALYSIS**

¶12.    Boyd raises the following issues:  (1)  Whether his conviction violates the double-jeopardy clause of the Fifth Amendment of the United States Constitution; (2)  whether the state failed to prove an essential element of the crime of shooting into an occupied dwelling; (3)  whether his conviction was against the overwhelming weight and sufficiency of the evidence; (4)  whether the state invented and argued facts not in evidence during closing argument; and (5)  whether the cumulative errors require reversal of conviction.

**I.**

¶13.    Boyd argues for the first time on appeal that prosecuting and convicting him of both murder and shooting into an occupied dwelling deprived him of his Fifth Amendment[3] protection from being twice put in jeopardy for the same offense.  Ordinarily, this Court will not entertain non-jurisdictional assignments of error not raised prior to appeal.  However, we have made exceptions for claims of significant violations of fundamental rights.  For

---

[3]"[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. See also, Miss. Const. art. III § 22 (1890).

4

instance, in a recent case in which a double-jeopardy claim was raised for the first time on appeal, we considered the issue because "the protection against double jeopardy is a fundamental right." *Graves v. State*, 969 So. 2d 845, 847 (Miss. 2007).

¶14. In keeping with our holding in *Graves*, and the heightened level of scrutiny afforded claims of fundamental right violations, we will fully address Boyd's claim that he was denied his constitutional protection against double jeopardy, notwithstanding his failure to raise it in the trial court. We caution trial counsel, however, that we are neither required nor inclined to do so in every case. We apply a *de novo* standard of review to claims of double jeopardy. *Brown v. State*, 731 So. 2d 595, 598 (Miss. 1999).

¶15. The constitutional protection at issue, commonly known as the double-jeopardy clause, is enforceable against the states through the Fourteenth Amendment. Its protection prohibits, *inter alia*, multiple punishments for the same offense. *Id.* at 599.

¶16. In double-jeopardy claims, we apply the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). *See, e.g.*, *Thomas v. State*, 711 So. 2d 867, 870 (Miss. 1998). Thus, even though a defendant may be charged with violation of two separate statutes, we look to see whether "each [statutory] provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. 299 at 304. Alternatively stated, a conviction can withstand double-jeopardy analysis only if each offense contains an element not contained in the other. *Powell v. State*, 806 So. 2d 1069, 1074 (Miss. 2001). If they do not, the two offenses are, for double-jeopardy purposes, considered the same offense, barring prosecution and punishment for both. *Id*. Conversely, where each offense includes an element not included in the other, "an acquittal or conviction under either

5

statute does not exempt the defendant from prosecution and punishment under the other."

*Blockburger*, 284 U.S. 299, 309 (1932), quoting *Morey v. Commonwealth*, 108 Mass. 433, 434 (Mass. 1871)).

¶17.	Boyd was convicted of felony murder, a crime defined by Mississippi Code Annotated Section 97-3-19(1)(c), as:

> (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases. . . . . (c) when done without any design to effect death by any person in the commission of any felony other than rape, kidnapping, burglary, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or felonious abuse and/or battery of a child in violation of subsection (2) of Section 97-5-39, or in any attempt to commit such felonies; . . ."

Miss. Code Ann. Section 97-3-19 (1)(c) (Rev. 2006).

¶18.	The State asserts that the underlying felony which satisfies the felony-murder statute is the crime of drive-by shooting, found in Mississippi Code Annotated § 97-3-109(1):

> A person is guilty of drive-by shooting if he attempts, other than for lawful self-defense, to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life by discharging a firearm while in or on a vehicle.

Miss. Code Ann. § 97-3-109(1) (Rev. 2006)

¶19.	In order to obtain a valid conviction of felony murder as charged in this case, the state was required to prove all essential elements of both Section 97-3-19(1)(c) and Section 97-3-109(1). Thus, the state was required to prove under Mississippi Code Annotated Section 97-3-109(1) (Rev. 2006) that Boyd caused serious bodily injury to another "purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value

6

of human life by discharging a firearm while in or on a vehicle." Boyd's second crime, shooting into an occupied dwelling, does not include this element.

¶20. The elements of Boyd's second crime, shooting into an occupied dwelling, are addressed in Mississippi Code Annotated Section 97-37-29:

> If any person shall willfully and unlawfully shoot or discharge any pistol, shotgun, rifle or firearm of any nature or description into any dwelling house or other building usually occupied by persons, whether actually occupied or not, he shall be guilty of a felony whether or not anybody be injured thereby and, on conviction thereof, shall be punished by imprisonment in the state penitentiary for a term not to exceed ten (10) years, or by imprisonment in the county jail for not more than one (1) year, or by fine of not more than five thousand dollars ($5,000.00), or by both such imprisonment and fine, within the discretion of the court.

Miss. Code Ann. § 97-37-29 (Rev. 2006).

¶21. In order to obtain a conviction under this statute, the state was required to prove that Boyd shot into a dwelling house. No such showing is required for a conviction under the felony-murder statute. Thus, each crime includes a necessary element not found in the other, and Boyd's conviction and sentence for both crimes survive *Blockburger* scrutiny. Boyd's double-jeopardy claim is thus without merit.

**II.**

¶22. Boyd next argues that, in prosecuting him under Section 97-37-29, the state failed to prove an essential element of the crime, that is, that he "willfully" discharged a pistol into a dwelling house. An act "willfully" done is an act "knowingly" and "intentionally" done. *Moore v. State*, 676 So. 2d 244, 246 (Miss. 1996); *Ousley v. State*, 122 So. 731, 732 (1929). Thus, the question is whether the state offered sufficient proof that Boyd had an intent to shoot into O'Neal's house on the night of May 1, 2004.

7

¶23.    This Court has held that "[u]nless one expresses his intent, the only method by which intent may be proven is by showing the acts of the person involved at the time, and by showing the circumstances surrounding the incident." *Thompson v. State*, 258 So. 2d 448 (Miss. 1972). Indeed, this Court specifically has held that intent to do an act or commit a crime is:

> . . . a question of fact to be gleaned by the jury from the facts shown in the case. The intent to commit a crime or to do an act by a free agent can be determined only by the act itself, surrounding circumstances, and expressions made by the actor with reference to his intent.

*Wheat v. State*, 420 So. 2d 229, 238 (Miss. 1982), quoting *Shanklin v. State*, 290 So. 2d 625, 627 (Miss. 1974). A jury's resolution of such factual determinations must be respected where, after reviewing all the evidence in the light most consistent with the jury's finding, we conclude there was sufficient evidence to support the finding. *Knox v. State*, 805 So. 2d 527, 531 (Miss. 2002).

¶24.    Charles Adams testified that, after O'Neal fired the shots in front of Boyd's house, Boyd stated that he was going to shoot at O'Neal's house in the same way O'Neal "woke [Boyd's] grandfolks up." L.C. Gibson testified that, after Boyd shot the decedent, he remarked, "I just shot because he had shot at my house. I just shot in his house to woke his people up like he did mines." This evidence amply supports the jury's finding that Boyd "willfully" shot into an occupied dwelling.

### III.

¶25.    Boyd next argues that his conviction was against the overwhelming weight and sufficiency of the evidence, and that the trial court should have granted his motions for

directed verdict, judgment notwithstanding the verdict, and a new trial. This Court's standard of review for sufficiency of the evidence has been established as follows:

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. *Edwards v. State*, 469 So.2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984)); see also *Dycus v. State*, 875 So. 2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Edwards*, 469 So. 2d at 70.

*Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005).

¶26.    When reviewing a case for sufficiency of the evidence, the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citation omitted) (emphasis in original)).

¶27.    In deciding whether a jury verdict is against the overwhelming weight of the evidence, this Court will disturb a jury verdict only when it is so contrary to the overwhelming weight of evidence that allowing it to stand would sanction an unconscionable injustice. *Taggart v. State*, 957 So. 2d 981, 987 (Miss. 2007).

¶28.    In determining whether evidence is sufficient to support a jury verdict which found Boyd guilty, this Court should review the evidence in the light most favorable to the State. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). All credible evidence consistent with the defendant's guilt must be accepted as true, and the state is given the benefit of all

9

favorable inferences that may be reasonably drawn from the evidence. *Id*. Because matters concerning the weight and credibility of the witnesses are resolved by the fact finder, the Court should reverse only where, "with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Fox v. State*, 724 So. 2d 968, 970 (Miss. Ct. App. 1998).

¶29.    Boyd argues that the state failed to establish that he had possession of the same caliber weapon that delivered the fatal shot. It was determined that the entrance wound was caused by a forty-five-caliber handgun. The bullet found by Glenda Hoover in her house also was from a forty-five-caliber handgun. State's exhibit S-7 was a nine-millimeter Luger handgun, which belonged to O'Neal, and was thus precluded as the murder weapon. Neither the murder weapon nor the weapon Boyd fired from the window of his automobile was found. L.C. Gibson testified: "After the shots were fired, I think [Boyd] put the weapon up under the seat or something like that . . . I saw him put it down." Both Adams and Gibson testified that Boyd expressed his intent to shoot at O'Neal's house, and that he admitted shooting O'Neal. Additionally, Glenda Hoover identified Boyd's voice during the altercation which took place outside O'Neal's house immediately prior to the shooting.

¶30.    We find sufficient evidence in the record to support the jury's finding that Boyd shot O'Neal and caused his death. Thus, the absence of any evidence to establish that Boyd possessed the particular caliber weapon used to shoot O'Neal is irrelevant.

¶31.    Boyd also claims he could not have delivered the fatal shot while sitting in a vehicle, because the medical examiner opined that the bullet that killed the decedent had to have been aimed by someone in the standing position. Boyd's argument is factually incorrect. The

10

medical examiner actually testified that the wound "would be consistent with *the decedent in a standing position receiving a gunshot wound through the chest*," not the shooter. (Emphasis supplied). Thus, Boyd's argument is without merit.

**IV.**

¶32. Boyd complains that certain portions of the state's closing argument had no basis in evidence or fact. Specifically, Boyd says the prosecutor falsely stated that guilt was proven when Boyd made a statement to Deputy Chambers that O'Neal's gun "may have been a .45."

¶33. The state argues, and we agree, that because this issue was not raised prior to appeal, it is procedurally barred. Counsel must object contemporaneously to inadmissible evidence in order to preserve the error for appeal. *Rushing v. State*, 711 So. 2d 450, 453 (Miss. 1998); *Lester v. State*, 692 So. 2d 755, 795 (Miss. 1997); *Crosswhite v. State*, 732 So. 2d 856, 861 (Miss. 1998). Because Boyd's counsel failed to object to the statement in question, the issue is waived. *Walker v. State*, 671 So. 2d 581, 597 (Miss. 1995) (citing *Foster v. State*, 639 So. 2d 1263 at 1270).

¶34. Boyd urges us to consider the issue under the "plain-error" doctrine. However, the plain-error doctrine is applied to closing argument only when the substance of the statement is "out of bounds for closing arguments." *Minor v. State*, 831 So. 2d 1116, 1124 (Miss. 2002). "The plain error doctrine has been construed to include anything that seriously affects the fairness, integrity or public reputation of judicial proceedings." *McClain v. State*, 929 So. 2d 946, 951 (Miss. Ct. App. 2005).

¶35. We are unable to find that the statements made in the state's closing argument created such a prejudicial effect, nor do we find that the issue rises to "the level of plain error." *Morgan v. State*, 818 So. 2d 1163, 1176 (Miss. 2002). Thus, this issue is without merit.

## V.

¶36. Finally, Boyd asks this Court to reverse his conviction based upon the combined effect of the alleged errors at his trial. If, after viewing "the prejudicial impact of the array of all the errors raised," it cannot be said that the defendant's trial met the "exacting standards of reliability required by the Constitution," the conviction should be reversed by this Court. *Hodges v. State*, 912 So. 2d 730, 788 (Miss. 2005).

¶37. In *Manning v. State*, after addressing twenty-one assignments of error with sub-parts, and after making numerous findings of no "reversible error," the Court stated:

> This Court has held that individual errors, not reversible in themselves, may combine with other errors to make up reversible error. *Hansen v. State*, 592 So. 2d 114, 142 (Miss. 1991); *Griffin v. State*, 557 So. 2d 542, 553 (Miss. 1990). The question under these and other cases is whether the cumulative effect of all errors committed during the trial deprived the defendant of a fundamentally fair and impartial trial.

*Manning v. State,* 726 So. 2d 1152, 1198 (Miss. 1998).

¶38. Neither the alleged individual errors nor their combination deprived Boyd of a fair trial. Thus, this issue is without merit.

**CONCLUSION**

¶39. For the reasons stated above, this Court finds no reversible error. Boyd's conviction is affirmed.

¶40. **COUNT I: CONVICTION OF MURDER AND SENTENCED TO SERVE A TERM OF LIFE IMPRISONMENT IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF SHOOTING INTO AN OCCUPIED DWELLING AND SENTENCED TO SERVE A TERM OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY TO THE SENTENCE IN COUNT I.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, P.J., NOT PARTICIPATING.**